No. 25,619.

CITIES SERVICE OIL COMPANY, *Appellant*, v. THE CITY OF MARYS-
VILLE et al., *Appellees.*

SYLLABUS BY THE COURT.

CITIES—*A City Ordinance Forbidding Storage of Kerosene and Gasoline (Ex-
cept in Specified Small Quantities) Unless Buried in Tanks at Least Three
Feet Underground is Valid.* Under statutory power to enact all such
ordinances as may be expedient for maintaining the welfare of the city, the
council may regulate the manner in which kerosene and gasoline may be
stored within the corporate boundaries. An ordinance forbidding the stor-
age of such fluids (except in small quantities) otherwise than in tanks
buried at least three feet underground is not invalid on its face, and one
who attacks it as unreasonable as applied to a particular state of facts has
the burden of overcoming strong presumptions in favor of its validity; and
it is held that in the present case such presumptions were not overcome.

Appeal from Marshall district court; FRED R. SMITH, judge. Opinion filed
January 10, 1925. Affirmed.

*T. F. Garver,* of Topeka, and *W. W. Redmond,* of Marysville, for the ap-
pellant.

*Edgar C. Bennett,* of Marysville, for the appellees.

*John S. Dean,* and *Harry W. Colmery,* both of Topeka, for the League of
Kansas Municipalities, as *amici curiæ.*

The opinion of the court was delivered by

MASON, J.: On October 8, 1923, the mayor and council of Marys-
ville, a city of the second class, passed an ordinance forbidding
gasoline, kerosene or other inflammable or combustible liquid to be
kept or stored within the corporate boundaries otherwise than in
tanks, barrels or other containers buried at least three feet under-
ground, exceptions being made in the case of crude oil, distillate or
fuel oil in containers of 500 gallons or less, and of gasoline, kerosene
or naphtha in quantities of less than 10 gallons. · The Cities Service
Oil Company brought this action for an injunction against the en-
forcement of the ordinance with respect to two steel tanks having a
capacity of about 10,000 gallons each, owned by it and used for the
storage of gasoline and kerosene, upon the ground that it· is un-
reasonable and violative of the fourteenth amendment to the federal
constitution.

The fact that in the absence of any ordinance on the subject a
court cannot rightfully enjoin the maintenance of tanks similar in

construction, use and location to those of the plaintiff (*The State, ex rel., v. Cozad,* 113 Kan. 200 213 Pac. 654) does not decide or vitally affect the present question. If a city in the exercise of its power to regulate certain matters could effectively forbid no act except those a court could enjoin without the existence of such regulation, there would be little purpose in passing regulatory ordinances.

If the legislature had expressly authorized the adoption of this specific ordinance it would have practically the standing of a statute and could be held void only in case it violated some constitutional guaranty. The authority for its enactment, however, is to be found in the grant of power to the council "to enact . . . any and all ordinances not repugnant to the constitution and laws of this state, and such as it shall deem expedient for the good government of the city" (R. S. 14-401), and "to enact and make all such ordinances, by-laws, rules and regulations not inconsistent with the laws of the state as may be expedient for maintaining the peace, good government and welfare of the city and its trade and commerce" (R. S. 14-439), and perhaps also in the section authorizing the council to "regulate the construction of and order of suppression of . . . any apparatus used in any . . . business which may be dangerous in causing or promoting fires." (R. S. 14-421.) The ordinance is therefore open to attack not only upon the ground of unconstitutionality, but also upon that of being unreasonable in the circumstances in which its enforcement is undertaken. (28 Cyc. 268-70.) Even in this situation, however, all presumptions are in favor of validity. The court does not substitute its judgment upon a question of policy for that of the governing body of the city, but denies effect to the ordinance only where its unreasonableness is so manifest as to show bad faith or such arbitrary conduct as to amount to practically the same thing. (See 19 R. C. L. 807-10.)

The ordinance is not invalid on its face. Regulating the storage of kerosene and gasoline in the interest of public safety is clearly an exercise of the police power. (Notes, Ann. Cas. 1918 E 145; 41 L. R. A., n. s., 458.) A requirement that tanks used for that purpose shall be placed underground plainly has substantial relation to the end sought, and is not to be held unavailable merely because a court may think some other plan more economical or effective. An ordinance forbidding the use of light-weight plumbing supplies has been upheld as a public-health regulation, in spite of strong medical evi-

dence that there is no relation between the two matters. (*Kleinhein v. Bentley,* 98 Kan. 431, 157 Pac. 1190.)

The plaintiff's tanks and those of other oil companies in the same block are situated near a sidetrack of the Union Pacific railroad. It was shown that five residences were within distances from the plaintiff's tanks varying from about 100 feet to about 150, and that it was reasonably expected that other residences would be shortly built in the neighborhood.

The tanks in controversy were erected in 1907 and were purchased by the plaintiff in 1919. Other tanks of other owners have been placed upon the same block, by permission of the city council, 1910 and 1921. The permission to place or maintain these tanks, whether given expressly or by implication, does not disable the city from afterwards requiring their removal. No unfair or oppressive treatment of the plaintiff is shown, such as in *Dobbins v. Los Angeles,* 195 U. S. 223, resulted in an injunction against the enforcement of an ordinance which forbade the erection of a gas works on ground where one had already been begun in reliance upon another ordinance passed only two months earlier, there having been no change of conditions affecting the matter. The question whether the existing or anticipated conditions and surroundings justified a change in restrictions concerning the storage of oil and gasoline in the vicinity of the plaintiff's plant was a matter for the determination of the city council, and no bad faith or its equivalent was established.

The ordinance does not prohibit the use of the plaintiff's lot for storing oil and gasoline; it regulates the manner of storage by requiring that the tanks shall be placed underground. It leaves nothing to the discretion or choice of the council. It therefore is not within the rule that even a legislature may not require a permit from some officer, who may refuse or grant it at his pleasure, for the doing of an otherwise lawful act. (*Smith v. Hosford,* 106 Kan. 363, 187 Pac. 685; *Julian v. Oil Co.,* 112 Kan. 671, 212 Pac. 884.) Even where an ordinance in terms merely says that a certain thing shall not be done without a permit from a designated officer, it is often interpreted as meaning that the officer is to grant the permit unless in his honest judgment reasonably exercised the interest of the public will thereby be put in jeopardy, a construction rendering it unobjectionable **on constitutional** grounds. (*Lieberman v. Van De Car,* 199 U. S. 552; see, also, *Wilson v. Eureka City,* 173 U. S. 32.)

The plaintiff's tanks are about ten feet in diameter and twenty feet high, resting on concrete foundations about twelve inches aboveground. At the top of each there is a fourteen-inch vent or manhole, with a steel lid on top, not fitting tight, but with an opening an eighth of an inch wide around it. One witness for the plaintiff testified:

"This vent is for the purpose of allowing the escape of vapors that arise from stored gasoline. If the pressure of the vapor in the tank becomes strong enough so that it cannot escape through that permanent vent, the lid or top of the manhole is so arranged that it rises up and enlarges the space for the escape of the vapor. These tanks have been so constructed and arranged ever since they were erected."

He told of instances in which fires had occurred in and about tanks so equipped, without an explosion. Another of the plaintiff's witnesses gave similar testimony, and on cross-examination was asked: "No possibility under the sun they [the vents] wouldn't work?" He answered: "Not if they were fixed right." The plaintiff's evidence tended to show that because of this device its tanks are not a menace on the score of fire or explosion and are at least as safe as though placed underground. Its principal contention is that this was conclusively established and therefore the requirement of the ordinance is unnecessary and unreasonable.

In behalf of the defendants the fire chief of Robinson testified to this effect: A fire took place a few days before the trial at an oil station there, having three ordinary storage tanks on top of the ground. "They said the tanks had vents on them." These tanks "began to explode and blow parts all around there. . . . From one of these tanks something blew out in the air. The upright tank got so hot that it bulged out and spread the seams and got a hole in it, and then they shot holes into it to let the gasoline out."

A former deputy state fire marshal testified that in October, 1919, he in that capacity investigated and reported upon a fire at Hays the day after it occurred, in which nine people were killed and twenty-six injured by the explosion of a tank of the Standard Oil Company.

It cannot be said that the evidence conclusively established the infallibility of the device used as a preventive of explosions, or its superiority in that regard to the placing of the tanks underground. In a somewhat similar situation it has been said:

"This is a complaint brought by the plaintiff in error to enjoin the city of Hope from enforcing an ordinance that forbids the storing of petroleum, gaso-

line, etc., within 300 feet of any dwelling, beyond certain small quantities specified. A demurrer to the complaint was sustained by the supreme court of the state `. . . The plaintiff is engaged in the business of selling petroleum oil and gasoline, and has tanks on the right of way of a railroad in the city, which it moved to that place at the city's request. The mode of construction is set forth, and it is alleged that an explosion is impossible, and that the presence of the tanks in no way endangers any buildings. The tanks are necessary for the business; the present position diminishes the cost of transferring oil from cars, and cannot be changed without considerable expense and a reduction of the plaintiff's lawful profits. The plaintiff adds that it knows of no available place in the city where the tanks could be put and oil stored without violating the ordinance; that the ordinance is unnecessary and unreasonable, and that the enforcement of it will deprive the plaintiff of its property without due process of law, contrary to the fourteenth amendment of the constitution of the United States.

"A long answer is not necessary. A state may prohibit the sale of dangerous oils, even when manufactured under a patent from the United States, . . . and it may make the place where they are kept or sold a criminal nuisance, notwithstanding the fourteenth amendment. . . . The power 'is a continuing one, and a business lawful to-day may in the future, because of the changed situation, the growth of population or other causes, become a menace to the public health and welfare, and be required to yield to the public good.' . . .

"Then as to the allegation that plaintiff's plant is safe and does not threaten the damages that led to the ordinance being passed, there are limits to the extent to which such an allegation can be accepted, even on demurrer; . . . As was well observed by the court below: 'We may take judicial notice that disastrous explosions have occurred for which no satisfactory explanations have ever been offered. The unexpected happens.'" (*Pierce Oil Corp. v. City of Hope*, 248 U. S. 498, 499, 500.)

Complaint is made of the admission of testimony of a former deputy state fire marshal concerning details of the Hays fire and explosion of which he did not have personal knowledge. Some matters of this sort were of such character that judicial notice may perhaps be taken of them—for instance, the loss of human life, the precise number of deaths being obviously immaterial. It is not apparent that any prejudice resulted or could result from any hearsay evidence given by the witness. The trial court found that the tanks at Hays which exploded were "equipped similarly to those of the plaintiff." It is contended that this finding is without support in the evidence and the suggestion appears to be made that it was influenced by the statements of the former deputy fire marshal made upon information only. That can hardly be the case, however, for the witness did not assume to have any information that the Hays

tanks had vents, whether from his own observation or from what others told him.

The testimony tended to show that the vent was a common device, and it is doubtless rather to be presumed that the Standard Oil Company employed it than that it failed to do so. The burden of showing the ordinance to be unreasonable rested upon the plaintiff. It offered nothing to show that the Hays tanks did not have vents, and we do not understand it to assert that to be the case. While of course the proceedings in another action would not be competent evidence of a fact here in dispute, it may be mentioned that the report of the decision on appeal from a judgment against the Standard Oil Company for a death caused by the Hays explosion recites that the petition did not allege negligence in reference to the absence of a safety valve, and the evidence showed one had been in use. (*Buchholz v. Standard Oil Co.*, 211 Mo. App. 397.)

One of the plaintiff's witnesses, a salesman for another company, testified that the objections to burying the tanks is the expense, the difficulty of ascertaining whether there is a leakage, and the danger of a buried tank floating out, or floating off of its foundation, after a heavy rain. He said, however, that his company buried its tanks at service stations and that he had seen tanks buried that were as large as 10,000 gallons. Another company was shown to have three buried tanks in the same block where the plaintiff's tanks are situated. If the safety of the public, in the honest judgment of the city council, reasonably exercised, requires the burying of tanks, these considerations of expense and convenience to the oil company can interpose no obstacle.

The judgment is affirmed.

Dawson, J., dissenting.