No. 26,907.

R. C. JACKMAN et al., *Plaintiffs,* v. THE PUBLIC SERVICE COMMISSION OF THE STATE OF KANSAS et al., *Defendants.*

### SYLLABUS BY THE COURT.

1. MANDAMUS—*Public Service Commission—Arbitrary Refusal to Approve Dam Project.* The allegations of an alternative writ of mandamus that in refusing to approve the plans and specifications of a dam across a navigable river the public service commission acted arbitrarily and unreasonably and without reference to the merits, and that the plans and specifications were proper and correct and the commission had no valid objection to them, are sufficient to raise an issue of fact as to the action of the commission being arbitrary.

2. SAME—*Acts and Duties Enforceable—Public Service Commission's Approval of Dam Project.* The provision of the statute for the submission to the public service commission, for its inspection and approval, of plans and specifications of a dam across a navigable river, by clear implication requires the commission to approve them if that is the cõurse that commends itself to its judgment after a full consideration of the matter on the merits. The commission is not authorized to withhold its approval merely at its own pleasure or volition, and mandamus is an appropriate remedy if it undertakes to do so.

Original proceeding in mandamus. Opinion filed May 8, 1926. Motion to quash alternative writ overruled.

*Henderson S. Martin,* of Lawrence, *Bennett R. Wheeler, S. M. Brewster* and *John L. Hunt,* all of Topeka, for the plaintiffs.

*M. J. Healy, John M. Kinkel, Henry V. Gott,* all of Topeka, *J. B. Wilson* and *Ralph R. Rader,* both of Lawrence, for the defendants.

The opinion of the court was delivered by

MASON, J.: The statute provides for the submission to the public utilities commission (now the public service commission) for its inspection and approval, by any person who desires to construct or repair, or who has already constructed, a dam over a navigable river of this state, of plans and specifications thereof, upon the approval

---

Licenses, 37 C. J. pp. 240 n. 78, 241 n. 79. Mandamus, 38 C. J. pp. 599 n. 69, 743 n. 55, 863 n. 64, 865 n. 78, 868 n. 27, 876 n. 78.

of which the construction of the dam shall be authorized, or, if already in existence, shall become established, the right to maintain it being confirmed. (R. S. 68-1502, 68-1503.) The sections of the statute referred to are printed in full following this opinion. The owners of the dam across the Kansas river at Lawrence presented to the commission plans and specifications for repairs, additions and betterment thereto. A committee of engineers was appointed by the commission to investigate and report upon them. The committee made a favorable report. The commission denied the application for the approval of the plans and specifications. The applicants bring this proceeding, seeking by mandamus to require the commission to approve them. An alternative writ has been issued, reciting that the plans and specifications are not subject to objection and that the commission had no valid objection to them; that from an engineering standpoint they were proper and correct in all respects; that they were so prepared as to avoid all damages and injury to anyone; that a request for findings of fact was refused; and that the refusal of the commission to approve them was unreasonable and arbitrary and made without reference to their merits. The case has been argued upon a motion of the commission to quash the writ—in effect a demurrer.

The commission's contention is that it has full discretion to grant or refuse the approval asked, and its conduct in that regard is not subject to judicial control. It suggests that the recitals of the writ that its course has been arbitrary and unreasonable is a mere conclusion of law and should be given no effect.

1. We think the allegations in question are as specific as the nature of the case admits, or at all events are sufficiently concrete to require that they be treated as assertions of fact. To say that the plans were not subject to objection, that the commission had no valid objection to them, that from an engineering standpoint they were proper and correct, and that they avoided injury to everyone, was to present issues in these respects pertinent to the controversy and susceptible of proof or refutation by evidence. The statement that the applicants' request for findings of fact was denied has some bearing on the matter. The statute does not in terms require the making of findings, yet in a matter of such obvious importance a refusal to indicate the grounds of the decision, where the circumstances alleged do not readily suggest a just reason, tends in some degree to support the assertion that none existed. The course of conduct fairly to be expected of a body to which is committed the

regulation of such extensive interests is not to be measured by what is expressly commanded. Of the failure of a commerce commission for two years to take action in a rate case it has recently been said:

"For this apparent neglect on the part of the commission no reason or excuse has been given; and it is just to say that, without explanation, its conduct evinces an entire lack of that acute appreciation of justice which should characterize a tribunal charged with the delicate and important duty of regulating the rates of a public utility with fairness to its patrons but with a hand quick to preserve it from confiscation." (*Smith et al. v. Illinois Bell Telephone Company,* 46 S. Ct. 408, 409.)

In a proceeding where mandamus was invoked to compel a probate judge to issue a permit for the sale of intoxicating liquor this court said the refusal of the judge to give his reason for not granting the application was immaterial. (*Stanley v. Monnet,* 34 Kan. 708, 9 Pac. 755.) The language of the opinion, however, does not adequately indicate what it was that the judge declined to furnish. The record shows the demand with which he refused to comply to have been that he state his reasons for believing the applicant unfit to be granted a permit, the evidence on which he founded his belief, and the names of the persons who gave him information on the subject.

2. The statute does not explicitly state under what conditions the commission shall grant and under what conditions it shall reject such an application as that here involved. It does not say in so many words that it shall grant the application if that is the course that approves itself to its judgment after a full consideration of the matter, but such a mandate is as much a part of the law as though it were explicitly stated.

"Even where an ordinance in terms merely says that a certain thing shall not be done without a permit from a designated officer, it is often interpreted as meaning that the officer is to grant the permit unless in his honest judgment reasonably exercised the interest of the public will thereby be put in jeopardy, a construction rendering it unobjectionable on constitutional grounds. (*Lieberman v. Van De Carr,* 199 U. S. 552.)" (*Service Oil Co. v. City of Marysville,* 117 Kan. 514, 516, 231 Pac. 1031.)

The federal case cited in the foregoing quotation involved the validity of an ordinance forbidding the keeping of milk for sale without a permit from the board of health. The ordinance did not state under what circumstances a permit should be issued or under what withheld. The supreme court of the United States held it valid because the state court of last resort had interpreted it as authorizing

the exercise of legal discretion, but not of arbitrary conduct on the part of the board of health. While the opinions of the state courts (80 N. Y. Supp. 1108; 175 N. Y. 440) deal rather briefly with this phase of the matter, they clearly show the ordinance was regarded as meaning that the board was to grant or refuse permits as the reason of the case should require, without discrimination where the applicants were similarly situated. Ordinances vesting discretion in public officers to issue or refuse permits without laying down a definite rule by which they are to be governed have often been held void as giving countenance to arbitrary action. (Note, 12 A. L. R. 1435.) But a rule sufficiently definite for the purpose is often inferred from general provisions of the ordinance, or from the nature of the case. (Same note, pp. 1445-1452.) So far as the constitutional feature of the matter is concerned a distinction is sometimes drawn with respect to the issuance of permits to engage in business according to whether the business is of an ordinary character or one which may be engaged in only as a matter of privilege, and is subject to entire suppression. (Same note, p. 1453.) We need not consider, however, whether the statute here involved would be invalid if construed to authorize the commission to reject the plans and specifications submitted to it merely as a matter of its own pleasure or desire. Regardless of any constitutional question, it is obvious that the intention of the legislature was that the commission should act upon its judgment of the merits of the case and not upon its own will, notwithstanding the matter rests in its discretion:

"There is nothing alarming in the term discretionary power. It has a legal meaning, with safe limitations. The intendment of a law which grants it, whether expressly or by implication, is that the discretionary decision shall be the outcome of examination and consideration; in other words, that it shall constitute a discharge of official duty, and not a mere expression of personal will. An arbitrary disapproval of a license, for example, determined upon without an examination of relevant facts, and expressing nothing but the mood of the officer, would not be, in contemplation of law, an exercise of the power granted. It would constitute, on the contrary, a neglect and refusal to perform his official functions, and would expose him to the interference of this court by the writ of mandamus." (U. S. ex rel. Roop v. Douglass, 8 Mackey 99, 109, quoted in substance in note 27, L. R. A., n. s., 1195; 15 R. C. L. 306, 309.)

Before the passage of the "bone dry" law the statute provided that unless certain facts were found to exist the probate judge should not issue a permit for the sale of intoxicating liquor for restricted purposes, while if these facts did exist he might issue it or not,

"in his discretion." (Laws 1887, ch. 165, § 1.) In construing the statute this court, although explicitly holding that all sales of liquor could be suppressed, said:

"The discretion vested by the statutes of this state in the probate judge over the subject of granting and refusing permits to sell intoxicating liquors is not an option to act according to prejudice or caprice, but it is a judicial discretion, to be exercised only with reference to the facts and circumstances of each case, after a full hearing. . . . This court, however, does not admit that the power vested in the probate judge to grant or refuse permits is an arbitrary one. . . . The legislature did not intend that the probate judge should be guided in any particular by his own will instead of the facts developed at the hearing. . . . While, therefore, in the preparation of the statute, the words vesting discretion in the probate judge were placed after words requiring that the averments of the application must be proved to his satisfaction, they nevertheless do not open to him an additional field of option, in which prejudice or caprice may rule. The discretion is still a legal one, to be exercised only upon the facts and circumstances of the case after a full hearing." (*State v. Durein,* 70 Kan. 13, 38-39, syl. ¶ 4.)

The public service commission may in its discretion approve or disapprove plans and specifications of the character submitted to them. But its action must be the result of its exercising its best judgment as to the merits of the application, as arrived at after a full consideration, and may not lawfully be determined by its mere volition or otherwise arbitrarily or unreasonably. The allegations of the alternative writ relating to the commission's decision having been made arbitrarily are sufficient to raise an issue of fact on that point, and therefore it states a cause of action. If all the averments of the writ are true, a fair exercise of judgment in the decision of the matter presented to the commission would necessarily lead to the approval of the plans and specifications. "The great weight of authority is to the effect that an exception to the general rule that discretionary acts will not be reviewed or controlled exists when the discretion has been abused." (38 C. J. 598. See, also, 37 C. J. 240.)

The argument in behalf of the commission is in a large degree addressed to upholding its authority to determine for itself the questions of fact involved in the application for its approval of the plans and specifications. This argument would be pertinent if we accepted the view that the allegations concerning arbitrary and unreasonable conduct were naked conclusions of law presenting no issue. But inasmuch as we hold these allegations must be treated as those of fact, and are considering the matter only as presented upon the face

10—121 KAN.

of the writ, the vital question is the authority of the commission to deny the application without regard to its merits.

A suggestion is made by the commission that the statute relied upon by the plaintiffs is unavailable because it does not apply to a part of a river lying within or alongside of, or flowing through a drainage district. (R. S. 68-1505.) The plaintiffs, however, tender an amendment alleging that such condition does not exist here.

The appropriateness of mandamus as a remedy is questioned. The issue presented being one of the arbitrary refusal to perform what is alleged to be a duty required by the facts, we regard mandamus as the most direct and adequate method of determining it.

A reference in the argument to the matter of possible loss to riparian owners by the proposed changes in the dam prompts us to say that an approval of the plans and specifications by the commission could not impair the right of such owners to compensation for any property rights thereby invaded.

The motion to quash the alternative writ is overruled.

HARVEY, J. (concurring specially): I agree that plaintiffs were entitled to a fair hearing of their application by the public service commission—that the legislature, in providing for such hearings, did not contemplate that the commission should act arbitrarily. But, authority to build or enlarge dams in the navigable streams of this state is a privilege; a matter of grace, rather than a right. In determining whether such privilege shall be granted, questions other than engineering problems may well be considered. The legislature has not stated what questions (engineering questions or others), shall be considered, nor has it given rules for their consideration. Evidently it is contemplated that all matters which suggest themselves to the members of the commission, or which may be suggested to them, bearing upon an application for the granting of such a privilege, should be fairly considered. Because it is alleged that the action of the commission was unreasonable and arbitrary, which allegations are in effect admitted (for the purpose of the motion) by the motion to quash, the motion should be overruled. But I wish to make it clear that I think this court has no authority to review the evidence and pass upon the question of whether plaintiff's application should or should not be granted. Authority to grant or to refuse such an application is given to the public service commission, not to this court. All this court should do in the matter is to see that plaintiff has a fair hearing.

Jackman v. Public Service Commission.

APPENDIX.

The following are full copies of the two sections of the statute relating to the approval by the public service commission of plans and specifications of dams across navigable rivers:

"Any municipality, corporation, person or individual desiring to construct a bridge, dam or other obstruction for either public or private purposes, or to repair or maintain a bridge, dam or other obstruction already constructed, over any of the navigable rivers of the state, shall prepare plans and specifications, together with the data upon which the same are based, and shall, when such bridge or dam forms part of a public highway, submit the same to the state highway commission for its inspection and approval, and when such bridge or dam does not form a part of a public highway such plans and specifications, together with the data upon which the same are based, shall be submitted to the public utilities commission for its inspection and approval; and when said plans and specifications are approved by the state highway commission or the public utilities commission, as the case may be, then said municipality, corporation, person or individual is authorized and empowered to construct, repair and maintain said bridge or bridges, dam or dams, or other obstructions according to the plans and specifications approved by the state highway commission or the public utilities commission and under the direction and supervision of the commission approving said plans and specifications: *Provided,* That no plans for the construction of any such dam shall be approved, and no such dam shall be constructed unless it contain flood gates or openings that can be opened in times of high water, so as to prevent the overflow of lands in the vicinity of said dam." (R. S. 68-1502.)

"Any municipality, corporation, person or individual who has already constructed any bridge or bridges, dam or dams or other obstructions in, over or across any of the navigable rivers of the state, shall make application and submit the plans, specifications and construction of said bridge or bridges, dam or dams or other obstruction to the state highway commission when such bridge or bridges, dam or dams or other obstruction forms a part of a public highway, for its inspection and approval, and when said bridge or bridges, dam or dams or other obstruction does not form a part of any public highway, then such plans, specifications and construction of said bridge or bridges, dam or dams or other obstruction shall be submitted to the public utilities commission for its inspection and approval. The commission to which such plans, specifications and construction are submitted shall act upon said application as soon as practicable. Upon the approval of said plans, specifications and construction of said bridge or bridges, dam or dams or other obstruction, by the state highway commission or the public utilities commission as the case may be, then immediately, said bridge or bridges, dam or dams or other obstruction shall become established and the right to maintain the same in, over or across said navigable rivers, confirmed and made permanent to the same extent and effect as if said right had been originally obtained and granted as provided by the preceding section, but all rights and privileges granted by this act shall be subject to the future wants and needs of the government of the United States and of the state of Kansas." (R. S. 68-1503.)