No. 33,739

ERWIN JOHNSON (FRED CRAMM, Intervenor), *Appellants*, v. THE
BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF RENO et al.,
*Appellees*.

(75 P. 2d 849)

Opinion filed
January 29, 1938.

*Roy C. Davis, Warren H. White, Frank S. Hodge, William H. Vernon, Jr.,*
and *Eugene A. White,* all of Hutchinson, for the appellants.

*Wesley E. Brown, J. Richards Hunter* and *Gerald Stover,* all of Hutchinson,
for the appellees.

The opinion of the court was delivered by

WEDELL, J.: This was an action to restrain and enjoin the board
of county commissioners of Reno county, and the township officers
of Grant township, No. 22, in Reno county, from recognizing or act-
ing under certain provisions of section 2 of chapter 214 of the Laws
of 1937, referred to as the "beer permit law," and to require the
board of county commissioners to issue a license for the sale of 3.2
beer notwithstanding the fact the township officers had objected to
the issuance of such a license in the manner provided by that law.
A demurrer was sustained to the petitions, and from that ruling
plaintiff, a lessee, and intervenor, the owner of the building in which
the beer was to be sold, appeal.

The pertinent averments of the petition were: The plaintiff is a lessee and in the possession and control of property known as the Hutchinson Country Club, together with the improvements thereon. The premises contained a large, three-story club house, golf course, swimming pools, tennis courts and facilities for dining, dancing, swimming, tennis, picnicking and fishing. The club was operated as a private enterprise by the plaintiff lessee and was supported by dues or membership fees. The plaintiff had on a previous occasion made application to the board of county commissioners for a license to sell nonintoxicating cereal malt beverages as provided by the statute and had complied with all of the requirements of the law to sell cereal malt beverages and had paid the required license fee. He had otherwise qualified for such a license, but the license had been refused for the sole and only reason that the township officers had objected in writing to the granting of the same. At the time of filing the suit, plaintiff again applied for a license to sell such beverages in accordance with the rules and regulations adopted by the board of county commissioners, which rules and regulations had been made according to the provisions of the law. Plaintiff had complied, and would continue to comply, with such rules and regulations in all respects. He paid the prescribed fee and was entitled to a license. He would then have received and will now receive a license except for the fact that the township officers threatened to object, and unless restrained, will again object in writing to the granting of the license by the board of county commissioners. The board of county commissioners threaten to, and will unless restrained, treat such objection as prohibiting them from issuing the license.

The petition then set forth that portion of section 2 of the act which authorized the action of the township board. It reads:

"The board of county commissioners in any county shall not issue a license without giving the clerk of the township board in the township where the applicant desires to locate, written notice, by registered mail, of the filing of said application. If said township board files no written objection to the granting of said license within ten (10) days after the mailing of said notice, then said license may be granted by said board of county commissioners, but if the township board files a written statement of objection to the granting of said license, the same shall not be granted."

The petition alleged the quoted provision was illegal and void for the following reasons:

"1. It is in conflict with article 1, section 8, of the constitution of the United States, and that portion thereof which vests in the congress of the United

States the right to regulate commerce among the several states. In this connection it is alleged that none of said cereal malt beverages are manufactured in the state of Kansas, but that same are manufactured in other states of the United States, and transported and sold in this state; and that the sale of same is protected by said interstate commerce clause of the federal constitution, the sale of same at retail being an essential and necessary part of the commerce of said products between the several states.

"2. It violates the 14th amendment to the constitution of the United States, which amendment provides that no state shall make or enforce any law which shall abridge the privileges or immunities of the citizens of the United States, nor shall any state deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

"3. The authority to enact or enforce such provision is not expressly conferred by any provision of the constitution of the United States, or by any provision of the constitution of the state of Kansas, and is invalid by reason of the 9th amendment to the constitution of the United States providing that the enumeration in the constitution of certain rights shall not be construed to deny or disparage others retained by the people, and section 20 of the bill of rights of the constitution of the state of Kansas, providing that the enumeration of rights in said constitution shall not be construed to impair or deny others retained by the people; and that all powers not delegated in the constitution remain with the people.

"4. It goes beyond section 21 of article II of the constitution of the state of Kansas, which provides that the legislature may confer upon tribunals transacting the county business of the several counties, such powers of local legislation and administration as it shall deem expedient, by re-delegating the authority to control licenses as to certain portions of the county only, to persons or officers other than county officers, when no authority to delegate any legislative power to such persons exists.

"5. It violates section 1 of the bill of rights of the state of Kansas, providing that all men are possessed of equal and inalienable rights, among which are . . . liberty. . .

"6. It violates section 2 of the bill of rights of the constitution of the state of Kansas, providing that all political power is inherent in the people, and all free governments are founded on their authority, and are instituted for their equal protection and benefit; and that no special privileges or immunities shall ever be granted by the legislature which may not be altered, revoked or repealed by the same body; and that such power shall be exercised by no other tribunal or agency. In this connection it is alleged that the provisions of said law above quoted purport to empower certain township officers (undefined) with the right to arbitrarily permit the issuance of licenses in any particular instances, and to prevent the issuance of licenses in any particular instances, thus creating a monopoly in the hands of such officers in the sale of said products in their respective townships.

"7. It violates section 17 of article II of the constitution of the state of Kansas, providing that all laws of a general nature shall have a uniform operation throughout the state; and that in all cases where a general law can be

made applicable, no special law shall be enacted. In this connection it is alleged that said law is special and non-uniform in its application and operation, according to the whim of township officers, no rule for the guidance of such officers being contained in the law.

"8. No board is created by the terms of said law to act or purport to act on behalf of a township, the term 'township board' having no statutory or legal meaning, the law failing to create a board to act for the township or to define what officers of the township, if any, shall constitute such board."

It was further alleged: The country club and its facilities are located near state highway 96, between the cities of Hutchinson and Nickerson, in Reno county, the same being about seven miles from the city of Hutchinson, and about five miles from the city of Nickerson, and that the premises were located approximately one mile from the township in which the city of Hutchinson is located. Hutchinson is located in Reno township, and that licenses have been and were being issued in that township, and that these beverages were being sold in the near vicinity of plaintiff's premises. Such licenses were being issued in the city of Hutchinson where most of the members of the country club reside. The city of Nickerson is located in township 22, the township in question, and the licenses have been and are being issued in that city. Under the provisions of the law such licenses were issued in that city as a matter of right to the applicant therefor, subject only to the qualification under the provisions of the law. The plaintiff had made substantial investments in maintaining the country club and facilities and unless he was able to sell these beverages, when the same were being sold elsewhere in the near vicinity, to his members and patrons and prospective members and patrons, his income is and will be materially reduced. He was losing and would continue to lose his investment and property rights in the premises, amounting to a virtual confiscation of the same.

The intervening petition of Fred Cramm adopted the allegations of the petition, prayed for a similar relief, and in substance alleged: He was a resident of the city of Hutchinson, and a citizen of the United States, and that he was the owner of the real estate and improvements described in the petition, and that the matters involved in the action seriously affected his rights and the value of his property.

A stipulation entered into on behalf of all parties was filed and reads:

"It is hereby stipulated that plaintiff's lease with the intervening petitioner,

Fred Cramm, is in writing, dated October 1, 1936, and filed in the chattel-mortgage records in the office of the register of deeds in Reno county, Kansas, on October 2, 1936, and recorded in book B-1, number 872-C. That W. R. Coleman was a co-lessee with the plaintiff, but is not now in active possession as lessee, though he has never been released from the lease. These facts shall be considered as amended and supplementing the petition and intervening petition herein, and as a part of the facts involved in the demurrer on behalf of defendants. The township officer defendants herein have and will object to the issuance of all permits in the township without discrimination. The permit sought by plaintiff is for the retail sale of bottled beer only."

The demurrer was directed to both the petition and the intervening petition, including the stipulation.

Was the demurrer to the petitions properly sustained? The answer must be found in the soundness of the charges of the unconstitutionality of the challenged portion of the act in relation to the averments contained in the petitions. It is therefore well at the outset to clearly bear in mind that the petitions eliminate all questions of discriminatory conduct or administration of the law by this township board. A careful analysis of the petitions further discloses only the allegation that the law made possible arbitrary exercise of discretion by the township board, but the petitions contained no charge that this township board, in fact, acted arbitrarily or capriciously in objecting to the issuance of the instant license or that its conduct in objecting to the issuance of any and all licenses was based on personal whim, prejudice or bad faith. In fact, appellants in their brief frankly state: "We are not accusing the township officers with bad faith, but are considering this provision of law in the abstract." In determining the correctness of the ruling on the demurrer we cannot, however, consider the law as an abstract proposition, but can consider it only in relation to the facts pleaded. Those facts eliminate both the question of discriminatory administration of the law, and whim, prejudice or caprice on the part of this township board in its objection to the issuance of any and all licenses. Appellants, however, insist that no standard, rules or guides of action, are set up in the act as a basis for determining whether the township board should object to the issuance of a license, and arbitrary action is thus made possible by the act. They urge that portion of the act is therefore void, and hence does not exist. If this be true they insist the license should have been granted by the county commissioners irrespective of whether the decision of the township board, in the instant case, was made arbitrarily or in good faith. The contention will be treated under the appropriate heading.

All presumptions are, of course, indulged in favor of the validity of the law. Doubts as to constitutionality are always resolved in favor of constitutionality. (*State v. Sherow*, 87 Kan. 235, 239, 123 Pac. 866.) It follows that unless the invalidity of the law clearly appears, courts are not at liberty to nullify the plain mandate of a coördinate branch of government. (*State, ex rel., v. Hardwick*, 144 Kan. 3, 4, 57 P. 2d 1231.) With these fundamental principles and guides clearly in mind, let us examine the law in question.

1. Appellants urge the challenged portion of the act contravenes the following portion of the 14th amendment to the federal constitution:

"No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

It is, of course, elemental that this amendment does not affect valid police regulations enacted by the states. That the law was intended to be and is a regulatory police measure is disclosed not only by its title, but by its express provisions. The fact it also results in the raising of revenue does not deprive it of its regulatory character. Appellants insist that beverages which contain no more than 3.2 percent of alcohol by weight have been expressly declared nonintoxicating by our lawmaking body. (Laws 1937, ch. 213.) That fact in itself does not necessarily exclude such beverages from the operation of regulatory measures. For the purpose of the questions involved in this lawsuit, we cannot take cognizance of only such portion of the law as declares 3.2 beer to be nonintoxicating, but are obliged to consider and uphold, if possible, other expressions of legislative will concerning that same beverage. Irrespective of what the legislative body said concerning the nonintoxicating character of the beverage in question, that same body, in no uncertain terms and in the same legislative session and in the following chapter, by express mandate declared the sale of the beverage should be regulated. It is not the province of a court to nullify that clear declaration of legislative will if the regulatory measure is otherwise a valid exercise of police power. Having the police power to forbid the sale of such an article entirely, it, of course, had the power to regulate its sale. (*State v. Nossaman*, 107 Kan. 715, 193 Pac. 347; *Little v. Smith*, 124 Kan. 237, 239, 257 Pac. 959.) Having the power to regulate the sale, it had the authority to de-

termine how, in its judgment, the desired regulation could be most effectively accomplished. In the early case of *State v. Durein*, 70 Kan. 13, 80 Pac. 987, the rule was stated thus:

"Power to legislate for the health, morals, peace and good order of society being conceded to the legislature, that body must determine the limits of its exercise, subject only to the condition that the measures adopted be reasonably appropriate to effect its purposes, and upon this question the court will rarely substitute its judgment for that of the legislature." (p. 32.)

It must be assumed the legislature fully recognized the well-known fact that all too frequently rural communities are inefficiently and inadequately policed, and hence that in such communities the sale of the beverage might well become or tend to become the source of evils which it was determined to prevent. It therefore saw fit to delegate to the township board the discretion of determining whether in such governmental subdivisions the sale of the beverage, in its sound judgment, should be permitted. That, however, is not all the lawmaking body did. It prescribed definite, uniform, minimum standards and guides of action for the license-issuing tribunal, the board of county commissioners. Definite mandatory requirements were set up in the act with which every applicant for a license was required to comply in order to sell the beverage in the event a license was granted.

Did the delegation of such discretionary power to the township board contravene the 14th amendment to the federal constitution? In *State v. Durein*, 70 Kan. 1, 78 Pac. 152, it was held:

"The statutes of this state regulating the sale of intoxicating liquors are not violative of the fourteenth amendment to the constitution of the United States because of the discretion vested in the probate judges of the respective counties over the subject of granting permits to sell such liquors for medical, mechanical and scientific purposes." (Syl. ¶ 6.) (See, also, opinion in same case on rehearing, 70 Kan. 13, 80 Pac. 987.)

In *Newman v. Lake*, 70 Kan. 848, 857, 79 Pac. 675, it was held proper to vest in the discretion of the probate judge, also, the question of whether a druggist's license to sell intoxicating liquor should be revoked. Similar regulatory powers over pool tables, operated for hire, have been held to be properly delegated to the governing body of cities. (*Burlingame v. Thompson*, 74 Kan. 393, 86 Pac. 449.) Delegation of power to *township boards* has been upheld to grant licenses for the operation of billiard halls, pool halls and bowling alleys, within the township. (*State v. Sherow*, 87 Kan. 235,

123 Pac. 866.) In the early case of *Monroe v. City of Lawrence*, 44 Kan. 607, 24 Pac. 1113, a city ordinance regulating the sale of cider was upheld. It was there said:

"It will be observed that the ordinance regulates rather than prohibits the sale of cider, and the legislative power to regulate the sale of an article or liquid which in some stages is harmless and in others hurtful is no longer open to question. The juice of apples quickly changes from fresh to hard cider, and hard cider is presumptively not only a fermented but an intoxicating liquor. (*The State v. Schaefer*, ante, p. 90; same case, 24 Pac. Rep. 92.) It is difficult to show when the change occurs, and when it reaches such a stage as will produce intoxication. It may have been thought that the drinking of cider might foster a taste for strong liquors, and that if the unrestricted sale of cider by the glass was permitted, the officers might be easily deceived as to the character of the drinks sold, and that a tippling-shop might be carried on under the guise of a place to sell cider. In the interest of the health of the people, and the peace and good order of the community, it was deemed wise to regulate the traffic. . . . Such a regulation violates no private right, and does not unreasonably or improperly restrain trade. (*Powell v. Commonwealth*, 127 U. S. 678; *Stokes v. City of New York*, 14 Wend. 88; *Mobile v. Yuille*, 3 Ala. 137; *The State v. Campbell*, 13 Atl. Rep. 585, and note.)" (p. 609.)

See, also, *State v. Railway Co.*, 76 Kan. 467, 92 Pac. 606, on delegation of powers to a railroad commission, and *Schaake v. Dolley*, 85 Kan. 598, 118 Pac. 80, on delegation of powers to state charter board with the right to determine the number of banks which might be granted charters in any one city, and *Barber County v. Bank Commissioner*, 113 Kan. 180, 213 Pac. 1054, on delegation of powers to state bank commissioner to fix a maximum rate of interest which banks may pay upon deposits in order to be permitted to participate in the benefits of the bank guaranty act, and *Jackman v. Public Service Commission*, 121 Kan. 141, 245 Pac. 1047, on delegation of power to inspect and approve plans and specifications for the construction or repair of a dam over a navigable stream. (See, also, list of illustrations of various delegations of powers enumerated in *State, ex rel., v. Hardwick*, 144 Kan. 3, 6, 57 P. 2d 1231.) Numerous other acts might be cited in which similar delegation of powers has been upheld which pertained to the regulation of a useful as well as a nonuseful trade or business, but which affected the public interest.

In *Murphy v. California*, 225 U. S. 623, 56 L. Ed. 1229, the rule was stated thus:

"The 14th amendment protects the citizen in his right to engage in any lawful business, but it does not prevent legislation intended to regulate useful

occupations which, because of their nature or location, may prove injurious or offensive to the public. Neither does it prevent a municipality from prohibiting any business which is inherently vicious and harmful. But, between the useful business which may be regulated and the vicious business which can be prohibited lie many nonuseful occupations which may or may not be harmful to the public, according to local conditions, or the manner in which they are conducted.

"Playing at billiards is a lawful amusement; and keeping a billiard hall is not, as held by the supreme court of California on plaintiff's application for habeas corpus, a nuisance per se. But it may become such, and the regulation or prohibition need not be postponed until the evil has become flagrant." (p. 628.)

In *State v. Durein*, 70 Kan. 13, 80 Pac. 987, it was held:

"The right to sell intoxicating liquors is not one of the privileges or immunities attaching to citizenship in the United States." (Syl. ¶ 2.)

To the same effect, see *State, ex rel. Sayles, v. Superior Court*, 120 Wash. 183, 206 Pac. 966, as to billiard and pool tables, and *McKown v. City of Atlanta*, (Ga.) 190 S. E. 571, as to beverages. In the latter case, decided in 1937, it was said:

"The due-process and equal-protection clauses of the state and federal constitution (const. Ga., art. 1, § 1, par. 3; U. S. amend. 14) are not infringed by a revocation of a permit to sell malt beverages. Being a privilege, it can be withheld, and may be given to one and denied to another." (p. 572.)

In *Burlingame v. Thompson*, supra, it was said:

"If the statute under which the ordinance was enacted falls within the police power of the state appellant must submit, whatever the effect upon his property and business. All rights exist subject to that power. By allowing poolhalls once to run the state gave no assurance that they might continue, and did not estop itself from subsequently prohibiting them. This subject was fully considered in the case of *Mugler v. Kansas*, 123 U. S. 623, 8 Sup. Ct. 273, 31 L. Ed. 205. The doctrine there announced was followed in the case of *Powell v. Pennsylvania*, 127 U. S. 678, 8 Sup. Ct. 992, 1257, 32 L. Ed. 253, and no departure from it has since been made." (p. 394.)

To the same effect see, also, *Dwyer v. People*, 82 Colo. 574, 261 Pac. 858, involving the issuance of licenses by the county commissioners to operate dance halls outside of incorporated cities. It was there stated:

"The business here under consideration is therefore governed by the rule applicable in cases involving licenses for the sale of intoxicating liquor before that traffic was constitutionally forbidden." (p. 576.)

In *Crowley v. Christensen*, 137 U. S. 86, 34 L. Ed. 620, 624, the rule is stated as follows:

"The manner and extent of regulation rest in the discretion of the governing

authority. That authority may vest in such officers as it may deem proper the power of passing upon applications for permission to carry it on, and to issue licenses for that purpose. It is a matter of legislative will only. As in many other cases, the officers may not always exercise the power conferred upon them with wisdom or justice to the parties affected. But that is a matter which does not affect the authority of the state, nor is it one which can be brought under the cognizance of the courts of the United States." (p. 91.)

That an act is valid which vests in a tribunal or public officials discretion in the issuance of a license or permit to operate a trade or business without prescribing standards or rules of action, where in the judgment of the lawmaking body the business in its very nature is or by reason of attendant circumstances may become subversive to the morals, health or general welfare, seems to be well established. (*State v. Sherow*, 87 Kan. 235, 123 Pac. 866; *Jackman v. Public Service Commission*, 121 Kan. 141, 245 Pac. 1047; *Scott v. Arcada Township Board*, 268 Mich. 170, 255 N. W. 752; *South Pasadena v. San Gabriel*, 134 Cal. App. 403, 25 P. 2d 516.) See, also, exhaustive annotations in 12 A. L. R. 1435, 54 A. L. R. 1104 and 92 A. L. R. 400.

It does not, however, appear that the mere fact no standards or guides of action need be prescribed, as to such trades or business, in order to render an act valid on constitutional grounds, that it was intended the discretion should be arbitrarily exercised, and if in fact the discretion should be clearly abused, the aggrieved party should be entirely without redress. That the discretion, in order to constitute an honest discharge of official duty, shall be reasonably exercised and shall not represent merely a personal will, prejudice or caprice, has been clearly stated. (*State v. Durein*, 70 Kan. 13, 80 Pac. 987; *Drainage District v. Railway Co.*, 99 Kan. 188, 161 Pac. 937; *Service Oil Co. v. City of Marysville*, 117 Kan. 514, 231 Pac. 1031; *Jackman v. Public Service Commission*, supra; *Harbin v. Holcomb*, 181 Ga. 800, 184 S. E. 603; *Bernstein v. Marshalltown*, 215 Ia. 1168, 248 N. W. 26, 86 A. L. R. 782; *South Pasadena v. San Gabriel*, supra.) In the Jackman case, *supra*, are contained references to cases involving both useful and nonuseful trades or business, and it was there said:

"The statute does not explicitly state under what conditions the commission shall grant and under what conditions it shall reject such an application as that here involved. It does not say in so many words that it shall grant the application if that is the course that approves itself to its judgment after a full consideration of the matter, but such a mandate is as much a part of the law as though it were explicitly stated.

" 'Even where an ordinance in terms merely says that a certain thing shall not be done without a permit from a designated officer, it is often interpreted as meaning that the officer is to grant the permit unless in his honest judgment reasonably exercised the interest of the public will thereby be put in jeopardy, a construction rendering it unobjectionable on constitutional grounds. (*Lieberman v. Van De Carr,* 199 U. S. 552.)' (*Service Oil Co. v. City of Marysville,* 117 Kan. 514, 516, 231 Pac. 1031.)" (p. 143.)

So, under the present law, it was not intended the discretion of the township board should be arbitrarily exercised. It was, however, plainly intended the township board should be vested with authority to object to the issuance of licenses in the event the morals, health or public interest, in its judgment fairly exercised, would be best conserved by such objection. Assuming, therefore, that the question of the validity of the law by reason of the alleged possibility of arbitrary conduct thereunder, was properly an issue in the absence of an allegation of arbitrary conduct on its part in the instant case, the demurrer was still properly sustained as to that feature of the case. Certainly it cannot reasonably be contended there is no basis in sound reason and judgment for a law which authorizes a township board to object to the issuance of licenses for such a business located outside of an incorporated city, where it is ordinarily difficult to obtain or maintain adequate police supervision. (*Scott v. Arcada Township Board,* 268 Mich. 170, 255 N. W. 752; *Dwyer v. People,* 82 Colo. 574, 261 Pac. 858.) In the Dwyer case, *supra,* it was held:

"The exemption of incorporated towns and cities from the operation of chapter 147, S. L. '27, concerning licensing of public dance halls by county commissioners, is a reasonable and valid classification." (Syl. ¶ 2.)

In the opinion it was said:

"The exemption of incorporated towns and cities, which themselves have a like power of control and where the business is more easily policed, is a reasonable and valid classification." (p. 576.)

In the Scott case, *supra,* it was said:

"The legislature provided in no uncertain terms that plaintiff's application for a license must be approved by the defendant board. It contains no direction or guide to the board, and no definite rule by which it shall be governed in its action in approving or declining to do so. The purpose of the provision undoubtedly was to permit each local municipality to determine whether beer and wine should be sold for consumption on the premises within its limits. To avoid the expense incident to submitting the question of approval to the voters, its determination was left to the township board, the official representative of the township. By so doing the legislature assumed that this board by its determination would represent the judgment of the voters." (p. 173.)

So, in the instant case, if the voters in township 22 of Reno county are dissatisfied with the judgment of the present township board, they may express that displeasure at an election. In the meantime appellants have been deprived of no constitutional right.

From what has been said it follows that cases cited by appellants on the subject of the right to contract, or *Little v. Smith,* 124 Kan. 237, 257 Pac. 959, are not in point. They in no way relate to an application for the granting of a privilege to operate a particular trade or business under a police regulation. Nor are such cases as *Chamberlain v. Railway Co.,* 107 Kan. 341, 191 Pac. 261, *In re Irish,* 122 Kan. 33, 250 Pac. 1056, or *Hair v. City of Humboldt,* 133 Kan. 67, 299 Pac. 268, pertaining to unreasonable discrimination, in point. Moreover, in the instant case, discriminatory administration of the law by this township board is not an issue and the good faith of the board in objecting to the issuance of all licenses is conceded.

2. Appellants contend the statute is in conflict with section 8 of article 1 of the constitution of the United States and that portion thereof which vests in the congress of the United States the right to regulate commerce among the several states. (*Little v. Smith,* 124 Kan. 237, 257 Pac. 959; 57 A. L. R. 100.) The facts in the case cited are not in point and the contention is wholly untenable. The Smith case involved a statute which prohibited the advertisement of cigarettes and cigarette papers by newspapers or periodicals published in this state notwithstanding the fact such publications had a wide interstate circulation. It might be observed that in that very case it was held the legislature had the power to prohibit or to regulate the sale of cigarettes within the state. Here the question involves the right to obtain a license for the sale of 3.2 beer within the state under a state regulatory police measure. Over that subject the state has full control. (*Mugler v. Kansas,* 123 U. S. 623, 31 L. Ed. 205.) In the recent case of *Schechter Corp. v. United States,* 295 U. S. 495, 550, 79 L. Ed. 1570, it was said:

"But the authority of the federal government may not be pushed to such an extreme as to destroy the distinction, which the commerce clause itself establishes, between commerce 'among the several states,' and the internal concerns of a state." (See, also, *In re Williams,* 79 Kan. 212, 98 Pac. 777.)

3. Appellants insist the authority to enact or enforce the particular provision of the law here involved is not expressly conferred by any provision of the constitution of the United States, or by any provision of the constitution of the state of Kansas, and is invalid by

reason of the 9th amendment to the constitution of the United States, providing that the enumeration in the constitution of certain rights shall not be construed to deny or disparage others retained by the people, and section 20 of the bill of rights of the constitution of the state of Kansas, providing that the enumeration of rights in said constitution shall not be construed to impair or deny others retained by the people; and that all powers not delegated in the constitution remain with the people.

The contention has been answered adversely in *State v. Durein,* 70 Kan. 13, 37, 80 Pac. 987; *Lemons v. Noller,* 144 Kan. 813, 816, 817, 63 P. 2d 177; *Brown v. New Jersey,* 175 U. S. 172, 44 L. Ed. 119.

4. It is also contended the law violates section 21 of article 2 of the state constitution, which provides:

"The legislature may confer upon tribunals transacting the county business of the several counties, such powers of local legislation and administration as it shall deem expedient."

Under this contention it is first urged the township board does not transact county business, but only township business, and hence the instant delegation of power to the township board is unauthorized by the above constitutional provision. The contention has been answered adversely to appellants. (*City of Emporia v. Smith,* 42 Kan. 433, 21 Pac. 807; *Hutchinson v. Leimbach,* 68 Kan. 37, 74 Pac. 598; *State, ex rel., v. City of Hutchinson,* 93 Kan. 405, 144 Pac. 241; *State, ex rel., v. Holcomb,* 95 Kan. 660, 662, 149 Pac. 684.)

It is also urged the power to issue a license having been delegated to the board of county commissioners, it cannot, under the constitutional provision, be delegated to another body, officers or tribunal, which may annul or override the power of the board of county commissioners. One difficulty with that contention is the act does not delegate the primary authority to the board of county commissioners to issue a license for any township. The county board can issue a license within a township only when the particular township board fails to object thereto. Unless the township board fails to object, the county commissioners have no power or authority to issue a license, and hence when the township board does object thereto the power of the county commissioners has not been annulled or overridden, as no such power existed. Cases cited by appellants in support of their contention under this heading involve other sections of the constitution or are inapplicable for other reasons. Reference is made to *State, ex rel., v. Hardwick,* 144 Kan. 3, 57 P. 2d

1231. It was there clearly shown that chapter 138 of the Laws of 1935, which dealt with the prevention of soil erosion and soil drifting, was not a local matter, but affected a wide area, which was not even limited to the state of Kansas. One ground on which the law was held invalid was, therefore, that it was in conflict with section 21 of article 2 of the state constitution. Since soil drifting was there shown not to be purely a local matter it could, of course, not be the subject of local legislation.

5. Appellants urge the challenged portion of the act is unconstitutional as being in violation of section 1 of the Kansas bill of rights, which provides:

"All men are possessed of equal and inalienable natural rights, among which are life, liberty, and the pursuit of happiness."

They rely upon the case of *Smith v. Steinrauf,* 140 Kan. 407, 36 P. 2d 995, in which a city ordinance was held invalid. The case is not in point. The ordinance of the city of Topeka, there involved, limited the number of cats an owner might keep in his residence without regard to distinctiveness of the character of the animals, purpose, manner or consequences of the keeping. The ordinance involved an absolute and unqualified property interest. It is, of course, futile to talk about equal *rights* under circumstances in which no person has a *right.* The denial of an application for a license to sell 3.2 beer as previously shown is not the denial of any right. Nor is it a denial of life, liberty or the pursuit of happiness within the legal contemplation of those terms. The application for a license to sell beer is a request for the granting of a mere privilege, under a regulatory police measure, which request the township board was under no duty to grant. (See, also, *Ratcliff v. Stockyards Co.,* 74 Kan. 1, 6, 7, 86 Pac. 150; *State v. Blair,* 130 Kan. 863, 288 Pac. 729; *State v. Haining,* 131 Kan. 853, 293 Pac. 952; *Bernstein v. Marshalltown,* 215 Ia. 1168, 248 N. W. 26, 86 A. L. R. 782, and annotation ¶ 792.)

6. Appellants contend the quoted portion of the act violates section 2 of the Kansas bill of rights, which provides:

"All political power is inherent in the people, and all free governments are founded on their authority, and are instituted for their equal protection and benefit. No special privileges or immunities shall ever be granted by the legislature which may not be altered, revoked or repealed by the same body; and this power shall be exercised by no other tribunal or agency."

They rely upon what was said in the cases of *In re Lowe, Petitioner,* 54 Kan. 757, 39 Pac. 710, and *Chamberlain v. Railway Co.,*

107 Kan. 341, 191 Pac. 261. The cases are not in point and the contention is without merit. The constitutional provision relied upon has been definitely construed as referring solely to political privileges and not to those relating to property rights. (*State v. Durein,* 70 Kan. 13, 18, 19, 80 Pac. 987; *O'Neal v. Harrison,* 96 Kan. 339, 340, 150 Pac. 551.)

7. It is seriously urged the law contravenes the following portion of section 17 of article 2 of the state constitution perhaps more clearly than any other state constitutional provision. It reads:

"All laws of a general nature shall have a uniform operation throughout the state; and in all cases where a general law can be made applicable, no special law shall be enacted; and whether or not a law enacted is repugnant to this provision of the constitution shall be construed and determined by the courts of the state."

That the law is general in its application to the entire state is not subject to debate. It was not enacted for any particular township, but for the entire state and for every township therein. One or any number of licenses may be granted in a township or none may be granted therein. No exception is made as to any township in that regard. The fact, if it were a fact, that only one license were issued in township "A" and that 500 licenses were issued in township "B," would not render the law ununiform. The law itself does not prohibit but conditionally permits the issuance of 500 or any other number of licenses in township "A," as well as in township "B." The condition for the issuance is identical in every township. The condition is that it shall not be objected to by the township board. The fact a township board in whose discretion the objection to the issuance of licenses is vested may, in its judgment, determine a certain number of licenses should be issued in one township, and another township board may, in its judgment, determine a much smaller number of licenses is sufficient, under conditions in its township, or that the public interest or welfare will be best served by granting no licenses, does not mean the law is not one of uniform operation within the meaning of that constitutional provision. It must be borne in mind the legislature has prescribed definite uniform minimum standards, rules or guides, with which every successful applicant must comply in order to operate under the act. Where the beverage is sold the operation under the law is uniform. The fact it does not result in the sale of the beverage in every township or results in the sale of different quantities in various townships, does

not render the law invalid for want of uniformity. (*Leavenworth County v. Miller,* 7 Kan. 479, 491; *Noffzigger v. McAllister,* 12 Kan. 315, 321; *State, ex rel., v. Smith,* 130 Kan. 228, 230, 285 Pac. 542; *Craig v. Craig,* 143 Kan. 624, 56 P. 2d 464.) Moreover, all licenses are uniformly subject to revocation and all operators under licenses are uniformly subject to injunction proceedings or prosecutions for violations of the act. Under these circumstances the legislative will cannot be frustrated on the ground the law fails to comply with the constitutional requirement of uniform operation. Appellants cite *Robinson v. Perry,* 17 Kan. 248; *Gardner v. State,* 77 Kan. 742, 95 Pac. 588; *State v. Lawrence,* 79 Kan. 234, 100 Pac. 485, and *State, ex rel., v. Hardwick,* 144 Kan. 3, 57 P. 2d 1231. When carefully analyzed it will be apparent those cases are not in conflict with the views here expressed. This, for example, is clearly illustrated by the Hardwick case cited, in which this same constitutional provision was involved. There, the law for the prevention of soil erosion and soil drifting did not require uniform operation. In the instant case, however, operation under the law, that is, sale of the beverage, would be conducted under uniform minimum rules and regulations. It is also clear that the same right of discretion is vested in every township board. We have previously shown that the vesting of such right of discretion in township boards does not constitute an arbitrary or fictitious classification but that the classification has a perfectly sound basis in reason. (*Scott v. Arcada Township Board,* 268 Mich. 170, 255 N. W. 752; *Dwyer v. People,* 82 Colo. 574, 261 Pac. 858.) In the recent case of *Craig v. Craig,* 143 Kan. 624, 56 P. 2d 464, we had the same constitutional provision under consideration relative to the amended statute for divorce actions instituted by residents on military reservations in this state, and said:

"It is insisted that is invalid special legislation. The contention is not sound. In the first place the amendment is not special legislation. Second, it is valid general legislation. The amendment applies to all within the state similarly situated. Its application is therefore general to the entire class it embraces. It is not a false or deficient classification, but a genuine, natural, reasonable and complete classification. It rests upon a substantial basis. It operates uniformly on all members of the class. It is neither arbitrary nor capricious." (p. 629.) (See cases therein cited.)

The same may properly be said of the instant law.

8. Appellants finally contend there is no such tribunal as a township board. Their contention is stated as follows:

"No board is created by the terms of said law to act or purport to act on behalf of a township, the term 'township board' having no statutory or legal

meaning, the law failing to create a board to act for the township or to define what officers of the township, if any, shall constitute such board."

The contention is entirely too technical as applied to the instant situation. That certain definite township officers are commonly referred to as constituting the township board is too well known to admit of argument. No one thinks of a township justice of the peace or constable as being a member of the township board. Furthermore, we know of no statute, and none is cited, which would justify such confusion of thought. Appellants are in error when they say, "There is no such tribunal as a township board." The legislature itself, for various purposes, has referred to the township trustee, treasurer and clerk as constituting the township board. (G. S. 1935, 80-802, 80-1302, 80-1501 and 80-1601.) These citations are not intended as being exhaustive but only as illustrative of the fact that these township officers are frequently designated under statutes as constituting the township board. The mere fact that no general statute pertaining to townships designates such officers as constituting the township board does not alter the fact that they are generally recognized as constituting not only such board but as constituting the governing officers of the township.

We have carefully examined the citations of authority under the various contentions and are satisfied the ruling of the trial court on the demurrer was proper. The judgment is therefore affirmed.