No. 29,369.

THE STATE OF KANSAS, ex rel. WILLIAM A. SMITH, Attorney-general, *Plaintiff,* v. OMER D. SMITH, *Defendant.*

(285 Pac. 542.)

Opinion filed March 8, 1930.

*William A. Smith,* attorney-general, and *John Hamilton Wilson,* of Salina, for the plaintiff.

*Robert Stone, James A. McClure, Robert L. Webb, Beryl R. Johnson,* all of Topeka, and *William S. Norris,* of Salina, for the defendant.

The opinion of the court was delivered by

JOHNSTON, C. J.: This is a quo warranto proceeding brought by the state challenging the right of Omer D. Smith to hold the office and exercise the functions of city judge of the city of Salina. It appears that Salina is a city of the first class, and that defendant was appointed as city judge by the governing body of that city in pursuance of the authority of R. S. 20-1401 to 20-1423, as amended by chapter 179 of the Laws of 1927, and a city ordinance. The act, R. S. 20-1401 to 20-1423, is a general one providing that whenever it is made to appear to the satisfaction of the governing body of a city of the first class that there is need for the establishment of city courts in such city for the administration of justice it may by ordinance establish a city court under the act, and that the mayor by and with the consent of the city commission or city council may appoint a city judge, clerk and marshal of a city court. The court is given jurisdiction in civil cases for the recovery of money to the amount of $1,000 and for the recovery of specific personal property up to the value of $500. In all other respects the city court is given jurisdiction of civil and criminal cases with the jurisdiction of justices of the peace, and with the powers and duties of justices of the peace, and that the laws relating to pleading, practice and proceedings in justice court not in conflict with the act, are made applicable to the city court. There is a further provision that a justice of the peace in the city shall have no jurisdiction in civil or criminal cases except civil cases for the recovery of money only where the amount claimed, exclusive of cost, does not exceed one dollar. (R. S. 20-1403.) The act provides that the one appointed as city judge shall be a resident of the city, an attorney at law, duly admitted to the bar, and that he shall hold his office to the next city election and until his successor is elected and qualified, and that while holding that office he shall not practice law in any of the courts of the state. The regular term of the city judge is fixed at two years, the salary of the judge is also fixed and provision is made for changes of venue, and for appeals to the district court. (R. S. 20-1402.) Other provisions are made for serving process, the collection and disposition of fees and some other matters not material to the present controversy.

The plaintiff contends that the act under which the appointment was made is an unconstitutional attempt to delegate legislative power, that it violates section 17 of article 2 of the constitution, requiring all laws to be of uniform operation throughout the state, and that no special law shall be enacted where a general one can be made applicable. The statute was enacted in 1923 (R. S. 20-1401 to 20-1423), and the first section of the act was amended in 1927. (Laws 1927, ch. 179.) It reads:

"That general section 20-1401 of the Revised Statutes of Kansas for 1923 be amended to read as follows: Sec. 20-1401. Whenever it is made to appear to the satisfaction of the governing body of any city of the first class or any city of the second class with more than 13,900 population, that there is need for the establishment of a city court in such city for the administration of justice, such governing body may establish a city court in such city. by ordinance of such city, and the mayor of such city, by and with the consent of such city commission or city council, shall appoint a judge of such city court, a clerk of such city court, and a marshal of such city court." (Sec. 1.)

The law as amended is general in form and is made applicable to all first-class cities of the state, and to all second-class cities attaining a population of 13,900. It covers all cities of the state of the classes mentioned and provides for city courts, all with the same jurisdiction, the same procedure and the same official organization. Instead of being special legislation, it is of a general nature, is uniform in its operation upon all cities of a certain class throughout the state, and was manifestly enacted to get rid of the numerous demands upon the legislature to provide for special city courts in particular cities. It has been said that—

"Whenever a law of a general nature is passed by the legislature for the whole state, and is not applied by the legislature to any particular locality thereof, and has no words prohibiting its operation in any particular locality, it is a law having uniform operation throughout the state within the meaning of said constitutional provision, although it may not practically have operation in every part of the state." (*Noffzigger v. McAllister,* 12 Kan. 315, 321.)

The objection most pressed in argument is that it is an unwarranted delegation of legislative power, in that it leaves to the governing body of a city to determine when there is need for the establishment of a city court in any city provided for by the act. It is argued that it was the function of the legislature to determine the need of a court in a city, a matter within its discretion, and being a legislative function the power could not be delegated to the governing body of the city or any other officers or persons. It will be ob-

served that the act came from the legislature in due form, complete in itself, providing in detail as to jurisdiction, procedure, officers and their duties. There is nothing in the act which purports to give the governing body of the city power to add to, take from or to modify the provisions of the act. The legislature simply provided that when a certain condition is found to exist in any city of the class named the act comes into operation. Upon the happening of a specified contingency, a fact to be found by a local agency, the act is to take effect in that city. It has been frequently held that when a formal and complete act is fairly within the legislative power and provides that it shall become operative upon the happening of a specified contingency, like the one in question, it cannot be regarded as a delegation of legislative power. In addition to *Noffzigger v. Mc-Allister*, supra, there is *Phœnix Ins. Co. v. Welch*, 29 Kan. 672, where an act provided that in a certain contingency higher burdens were to be imposed on a foreign insurance company. The contingency was defined by the legislature, which prescribed the rule for fixing such higher burdens, and it was decided:

"While the legislative power of the state is by the constitution vested in the legislature, yet that body has authority to pass a law whose operation is by its terms made to depend upon a contingency, even though that contingency be some action on the part of the legislature of another state."

In *State, ex rel., v. Hunter*, 38 Kan. 578, 17 Pac. 177, the court in considering a statute providing for police government of cities, and that police commissioners and other officers should be appointed by the executive council upon the petition of 200 householders or when the executive council deemed it advisable, and it was contended that the act was invalid on the ground that it was a delegation of legislative power, said:

"The validity of laws, the operation of which is made to depend upon the occurrence of some future event or contingency, certain or uncertain, cannot well be doubted. That contingency may be the vote or petition by a certain number of people to be affected by the law, or some expression or act of their representatives or agents, or it may arise upon the act or will of some third person. Indeed, an infinite variety and number of events or contingencies might be named that the legislature might adopt." (p. 585.)

In *City of Emporia v. Smith*, 42 Kan. 433, 22 Pac. 616, the legislature had enacted the statute conferring upon cities the power to extend their boundaries, acting through the officers of the city and the judge of the district court. It was urged that such powers

could only be conferred on tribunals transacting county business, and it was decided that—

"The power given to the legislature by section 21 of article 2 of the constitution, to confer on the tribunals transacting county business such powers of local legislation and administration as it may deem expedient, is not exclusive, but such powers can be conferred on other local agencies."

In *State v. Butler County,* 77 Kan. 527, 530, 94 Pac. 1004, where there was a claim that an act was invalid because legislative power was delegated to one-fourth of the voters of the county, who signed a petition upon which provisions of the law would become operative in the county, it was said:

"The petition was not necessary to make the law. It was only necessary to give the board authority to act under the law. A statute is no less a law because its taking effect is made to depend upon some subsequent event. (Cooley's Con. Lim., 7th ed., 164.) In this respect the law is analogous to a great variety of laws, the validity of which has been upheld." (Citing a number of authorities.)

In *Cole v. Dorr,* 80 Kan. 251, 101 Pac. 1016, where the validity of an act was challenged on the ground that its application was left to depend upon a vote of the electors and was therefore an attempt to delegate legislative powers and was invalid, the act was upheld and it was said:

"Even in jurisdictions where it was held that the taking effect of a statute cannot be made to depend upon the result of a popular vote the principle is recognized that 'if an act in question is complete in itself, and requires nothing further to give it validity as a legislative act, it is not vulnerable to attack upon constitutional grounds simply because the limits of its operation are made to depend upon a vote of the people.'" (p. 253.)

In *Schaake v. Dolley,* 85 Kan. 598, 118 Pac. 80, an act was under consideration which gave the charter board authority to act upon applications for the organization of banks and to determine the public necessity in the community for a bank, and if it determined unfavorably to the application a charter might be refused. The law was held to be valid. In the opinion it was said that—

"The statute belongs to the well-known class in which the legislature prescribes a rule to be applied according to the existence or nonexistence of some fact which the officer or board called upon to administer the law is required to ascertain. The question for the charter board in any case arising under this law is, Are the banking facilities of the community adequate to the public needs? This question is to be determined, like any other question of fact, from a consideration of the conditions existing in the community concerned." (p. 610.)

A similar question was raised upon the statute creating the entomological commission with authority in the commissioners to inspect orchards, and if San José scale or other injurious insect, pest or plant diseases were found to exist the commissioners were authorized to proceed under the statute to destroy orchards at the expense of the owner. The objection that legislative power had been conferred on the commission wherein they were authorized to find a fact, that is, the existence of San José scale, and if found to apply and enforce the provisions of the statute respecting it, was answered by a decision that the statute is not invalid because it delegates to the commission the power to declare the existence of conditions which call into operation the provisions of the statute. (*Balch v. Glenn*, 85 Kan. 735, 119 Pac. 67.) The validity of a statute, having for its purpose the preservation of public health and the prevention of dissemination of dangerous communicable diseases, was challenged because the state board of health was given authority to designate such diseases as are infectious or communicable, to make rules and regulations pursuant to the statute and to provide for the treatment of diseases; but it was held that the statute could not be regarded as unconstitutional on the ground that it delegated legislative power. (*In re McGee*, 105 Kan. 574, 185 Pac. 14. See, also, *Smith v. Atchison County*, 81 Kan. 91, 105 Pac. 37; *Railroad Co. v. Leavenworth County*, 89 Kan. 72, 130 Pac. 855; *Barber County v. Bank Commissioner*, 113 Kan. 180, 213 Pac. 1054; 12 C. J. 864, 865.)

The statute in question falls clearly within the rule of the decisions cited, and cannot be held to be a delegation of legislative power to the governing body of the city. The contingency under which the act was to become operative in a city was defined by the legislature; that is, a finding and declaration of the governing body that there is need for the establishment of a city court for the administration of justice within the city. These officers elected by the people may be assumed to be well qualified to determine whether or not such a need exists. The declaration of a finding made is required in the act to be embodied in an ordinance. It might have been provided for through a resolution or a motion passed or other official declaration. The ordinance passed was a sufficient record of the finding of the commission and is no more a delegation of legislative power than if the finding had been declared by a method other than by ordinance.

It is contended that the city court was not created by law, but was created by a city ordinance, and is therefore a violation of section 1 of article 3 of the state constitution. It reads:

"The judicial power of this state shall be vested in a supreme court, district courts, probate courts, justices of the peace, and such other courts, inferior to the supreme court, as may be provided by law; and all courts of record shall have a seal to be used in the authentication of all process."

The city court is a judicial body and comes fairly within the class of those courts not specially mentioned in the constitution, but which may be provided by law. As already appears, these city courts have been provided for in the act itself. All things relating to jurisdiction, procedure, officers, terms of office, salaries, places of holding court, expenses of court, taxation of fees and costs, changes of venue, *pro tem.* judges, the filling of vacancies, and many other details, leave nothing to be provided for by city ordinance so far as the creation of the courts is concerned. In the act itself it is stated that the courts are established under the authority of the law and not by ordinance, and recites: "The court hereby established shall under the limitations and restrictions herein provided have original jurisdiction," etc. (R. S. 20-1403.) The creation of courts authorized by law under the constitutional provisions has been considered in *Matthews v. Comm'rs of Shawnee Co.*, 34 Kan. 606, 9 Pac. 765, and *Morris v. Bunyan*, 58 Kan. 210, 48 Pac. 864, and under the authorities it must be held that the city court was created by law and not by ordinance.

There is a further contention that the act violates section 9 of article 3 of the constitution, which provides that there shall be two justices of the peace in each township "whose powers and duties shall be prescribed by law." It is argued that so much of the jurisdiction of justices of the peace is conferred on city courts as to be a practical abolition of them. The constitution does not attempt to declare the jurisdiction of justices of the peace, but in terms provides that it shall be prescribed by law. Under that specific authority the legislature has prescribed the jurisdiction of justices of the peace, within cities in which city courts are established. It has limited their powers and duties to a great extent, but it has not abolished the office. It has been expressly held that an act providing such a limitation does not render it unconstitutional. (*In re Greer*, 58 Kan. 268, 48 Pac. 950; *Chesney v. McClintock*, 61 Kan. 94, 58 Pac. 993.)

One other objection to the act is raised by the plaintiff, namely, that the city judge is a judicial officer, and under the constitution an appointment to the office must be made by the governor. As we have seen, the act provides that the appointment shall be made by the governing body of the city. The statute provides that when the court is established, the judge shall be appointed by the mayor and city commission or mayor and city council, whichever is in control, and that the appointee shall hold his office until the next city election or until a successor is elected and qualified, and when elected, he shall hold the office for a term of two years. (R. S. 20-1402, 20-1522.) It is contended that the appointment provided for in the act is a violation of section 11 of article 3 of the constitution, which reads as follows:

"All judicial officers provided for by this article shall be elected at the first election under this constitution, and shall reside in their respective townships, counties or districts during their respective terms of office. In case of vacancy in any judicial office, it shall be filled by appointment of the governor until the next regular election that shall occur more than thirty days after such vacancy shall have happened."

Is a city judge, not mentioned in the constitution, but one to be created by law, within the meaning of the provision that vacancies in the office shall be filled by the governor? The provisions relating to the appointment by the governor to fill vacancies are those provided for in that article, and not some that may thereafter be created by law. The section opens with the declaration that "All the judicial officers provided for *by this article* shall be elected," etc., followed by the provisions relating to the filling of vacancies. It applies to the officers named in the article, but does not cover those thereafter created by law. That was the view taken by this court in *Matthews v. Comm'rs of Shawnee Co.,* supra, in which it was said:

"Under the constitution the legislature has the power to create new courts, inferior to the supreme court, but what their jurisdiction or the tenure of the office of the judges shall be, or how *the judges shall be selected or chosen,* is not prescribed by the constitution." (p. 609.)

Farther along in the opinion it was said:

"Indeed, courts may be created by statute in a great variety of ways and courts so created are not courts provided for by the constitution, but are simply such other courts inferior to the supreme court as may be provided by law. (Cons. Art. 3, Sec. 1.) Only such courts as are specifically mentioned in the constitution are courts provided for by the constitution." (p. 609.)

It was competent for the legislature to provide for the appointment of judicial officers not provided for in article 3, which fall in the class of courts inferior to the supreme court, as might be provided by the legislature. In section 19 of article 2 of the constitution there is a provision that—

"The legislature, . . . shall have the power to provide for the election or appointment of all officers and the filling of all vacancies not otherwise provided for in this constitution."

In accordance with the legislative direction, the defendant was duly appointed city judge and is now in the exercise of the functions of his office.

The writ is denied.