20 N.J. Super. 280 (1952)
89 A.2d 727
THE TOWNSHIP OF UPPER PENNS NECK, IN THE COUNTY OF SALEM, AND FRED F. FOREMAN, PLAINTIFFS,
v.
THE TOWNSHIP OF LOWER PENNS NECK, IN THE COUNTY OF SALEM, AND THE TOWNSHIP OF OLDMANS, IN THE COUNTY OF SALEM, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided June 23, 1952.
*282 Mr. John M. Summerill, Jr., attorney for the plaintiffs.
Mr. J. Bernard Rogovey, attorney for defendant Township of Lower Penns Neck.
WOODS, J.S.C.
This is an action in lieu of a prerogative writ brought by the Township of Upper Penns Neck, a municipality in the County of Salem, and by Fred F. Foreman, who on February 7, 1949, was appointed by the Governor as magistrate of the "Municipal Court of the Township of Upper Penns Neck, Township of Lower Penns Neck and Township of Oldmans," pursuant to the provisions of L. 1948, c. 264, § 13, as amended (N.J.S.A. 2:8A-13), and following an intermunicipal agreement entered into by the Township of Upper Penns Neck, the Township of Lower Penns Neck and the Township of Oldmans, as provided by *283 L. 1948, c. 264, § 17, as amended (N.J.S.A. 2:8A-17), which reads:
"Two or more municipalities may, by similar ordinances, enter into an intermunicipal agreement to establish a single municipal court with jurisdiction coextensive with the territory of the municipalities party to the agreement. Upon the taking effect of the ordinances establishing such a municipal court, all police courts, magistrate's courts and recorder's courts, by whatever name called, theretofore existing in the respective municipalities shall be abolished and their functions, powers and duties, records, property, and pending cases shall be transferred to the municipal court so established."
The ordinance establishing the aforesaid municipal court was adopted by the Township of Upper Penns Neck on December 29, 1948. A like ordinance was adopted by the Township of Lower Penns Neck on December 28, 1948, and by the Township of Oldmans in December, 1948.
No time was fixed for the continuance of this intermunicipal agreement in any of the aforesaid ordinances, and no time is set in the statutes for the continuance of such an intermunicipal agreement; nor is any provision made in the statutes or in the ordinances for the termination or rescission of such intermunicipal agreement. The statute and the ordinances provide for the appointment of a municipal judge for a period of three years.
On December 18, 1951, the Township of Lower Penns Neck gave written notice to the Township of Upper Penns Neck and to the Township of Oldmans that it had adopted an ordinance repealing the ordinance adopted on December 28, 1948, and was withdrawing from the intermunicipal agreement.
On December 6, 1951, the Township of Lower Penns Neck adopted an ordinance entitled "An Ordinance to repeal an Ordinance entitled `an Ordinance Establishing a Municipal Court of the Township of Upper Penns Neck, Township of Lower Penns Neck and Township of Oldmans, in the County of Salem,'" which ordinance was to become effective December 31, 1951, and on December 20, 1951, the aforesaid *284 Township of Lower Penns Neck adopted an ordinance entitled "An Ordinance Establishing a Municipal Court in the Township of Lower Penns Neck, in the County of Salem" to take effect as of January 1, 1952. On January 3, 1952, a municipal judge was appointed by the Township Committee of the Township of Lower Penns Neck.
The plaintiffs contend that the ordinances adopted by the defendant, Township of Lower Penns Neck, are wholly void because they are without the power of the defendant, Township of Lower Penns Neck, to enact for the following reasons:
1. An ordinance enacted under a specifically delegated power cannot be repealed.
2. An ordinance contractual in nature can only be repealed with the consent of the parties thereto.
3. A municipal magistrate is not removable from office during his term except upon charges being preferred and a fair trial given except where the office is abolished for economy.
The sole question for determination is: May a municipality repeal an ordinance adopted pursuant to L. 1948, c. 264, § 17, as amended (N.J.S.A. 2:8A-17), which created an intermunicipal agreement establishing a single municipal court for three townships, and thereby withdraw from such agreement?
A municipality derives all of its power and authority from the State, and it is fundamental that the Constitution and general laws of the State are controlling as to the establishment of municipal courts. Article VI, Section I, paragraph 1 of the New Jersey Constitution of 1947 provides as follows:
"1. The judicial power shall be vested in a Supreme Court, a Superior Court, County Courts and inferior courts of limited jurisdiction. The inferior courts and their jurisdiction may from time to time be established, altered or abolished by law."
Such is the authority given by the Constitution to the Legislature. And the Legislature by an express grant has *285 given every municipality in the State the authority and right to establish and create a municipal court (N.J.S.A. 2:8A-13, 2:8A-17) by ordinance. The municipality must make the decision that a municipal court is necessary, and having done so, it must decide whether it shall have its own municipal court or whether it shall enter into an intermunicipal agreement with an adjoining municipality or municipalities. The statute prescribes the jurisdiction of the court, and provides for the appointment of a magistrate, his qualifications, term of office, other officers of the court and the practice and procedure in such court. But nowhere in the act is there any provision relating to the repeal of the ordinance establishing such court, and it is silent as to the period of time for which such municipal court once created shall continue.
As a general rule, the right to repeal ordinance is a general power which exists by reason of the right to pass ordinances. State (Hudson Telephone Co.) v. Mayor, etc., of Jersey City, 49 N.J.L. 303, 8 A. 123 (Sup. Ct. 1887). Justice Garrison elaborated on this rule in the case of Stemmler v. Borough of Madison, 82 N.J.L. 596, 83 A. 85 (E. & A. 1912) by continuing: "And such in varying form is the statement of the rule when the ordinance is not a contract, or one that is, from its nature, exhausted by a single exercise, 28 Cyc. p. 383, 21 A. & E. Enc. Law. p. 1002."
It is to be noted that N.J.S.A. 2:8A-13 and 2:8A-17 authorizes "any municipality, or any two or more municipalities * * * by ordinance or ordinances" to "establish a municipal court." "The power to make includes the power to repeal." Dillon, Municipal Corporations, p. 314. By implication then, may we resolve the question put to this court? In Stemmler v. Borough of Madison, already cited, Justice Garrison speaking for the Court of Errors and Appeals wrote:
"The implication in question may, of course, be negatived by statutory language, and such, in the present case, the Supreme Court thought was the effect of sections 33 and 58 of the Borough Act of *286 1897. We do not, however, find in these sections, or elsewhere in the act, anything that abrogates this salutary and well-nigh indispensable rule, which proceeds upon the principle that, when the Legislature confers upon a deliberative body a power to be exercised by it, such grant, without express words, includes the ordinary incidents of the exercise of similar powers by such a body. Such incidents are by this rule presumed to have been in the legislative mind in the selection of the recipient of its delegated power. The nature of the powers to be implied depends, therefore, upon the nature of their recipient: a power conferred upon a judicial body having one set of implications, and a power conferred upon a deliberative body having a totally different set. In every case something is left to implication, and the line cannot logically be drawn short of the exercise of the power by the recipient in accordance with its characteristic mode of procedure.
"`Ordinance,' as a term of municipal law, is the equivalent of legislative action, and hence its employment in a statute carries with it by natural, if not necessary, implication the usual incidents of such action. If this were not so, the power to pass an ordinance would not carry with it the power to introduce it, or to refer it, or to amend it, or to move for its reconsideration, or to apply to it any of the legislative or parliamentary usages that universally obtain in deliberative bodies as incidents of legislative action.
"That the right to repeal is as much an incident of ordinary legislative action as the right to enact rests, as we have seen, upon sound authority, and hence must, in reason, be included among those powers that pass by the natural implication that, if recognized at all, as it must be, cannot logically stop short of giving full effect to the legislative will as thus construed."
There has been no recorded interpretation of this statute in our State and we have been able to find only one case having somewhat similar facts. This is the case of Brown v. Arkansas City, 135 Kan. 453, 11 P.2d 607, 608 (Sup. Ct. Kan. 1932). Here there was a proceeding in mandamus to require the City of Arkansas City to test the validity of city ordinance No. 886 repealing an earlier ordinance No. 844, which established a city court under the provisions of R.S. 20-1401 to 20-1423. R.S. 20-1401 provided that whenever it was made to appear to the satisfaction of the governing body of the city that there was need for the establishment of a city court in such city, such governing body might establish a city court in such city by ordinance of such city. It prescribed the jurisdiction of the court, the appointment and *287 election of a judge, other officers and their tenure of office, but nowhere in the act was there any provision relating to the repeal of such ordinance. The court said:
"The validity of the original ordinance is conceded, but it is the contention of the city and its mayor and commissioners that R.S. 14-401, which gives the governing body of a city the power to enact, ordain, alter, modify, or repeal any and all ordinances not repugnant to the constitution and laws of the state, fully authorizes the city to repeal this ordinance. The reasoning is that, since the governing body was to determine the need for the establishment of such a court, the same body should determine when that need ceased to exist and then discontinue the court."
However, the court differed from the contention of the city authorities and held:
"Under our Constitution the Legislature is the only source of this power and the Legislature has limited its delegation of authority to the city to one feature only, and that is the determination of a need for its establishment. This is in the nature of a finding of fact and is not necessarily legislative in character. Any act or attempted act by the city beyond or aside from that one delegated feature would be repugnant to the laws of this state. `Municipal corporations are creations of law, and can exercise only powers conferred by law and take none by implication. * * *' State, ex rel. v. City of Coffeyville, 127 Kan. 663, syl. par. 1, 274 P. 285 [63 A.L.R., 610]. * * * `There is nothing in the act which purports to give the governing body of the city power to add to, take from, or to modify the provisions of the act. The Legislature simply provided that when a certain condition is found to exist in any city of the class named, the act comes into operation. Upon the happening of a specified contingency, a fact to be found by a local agency, the act is to take effect in that city.' * * * [State, ex rel. v. Smith, 130 Kan. 228, 285 P. 542]. So, it has already in this state been determined that the finding of a need for the establishment of a city court was not an exercise of legislative power, although such finding was put in the form of an ordinance. If the city in the first place lacked legislative power, there was no possibility of it possessing an implied power to rescind or repeal. This is in harmony with the general law on this subject. `The general rule governing the power of municipal councils to repeal ordinances does not apply where the ordinance has been enacted under a narrow, limited grant of authority to do a single designated thing in the manner and at the time fixed by the legislature, which precludes the implication that the common council was given any further authority over the subject than to do the one act." 43 C.J. 563 [62 C.J.S., Municipal Corporations § 435; 19 R.C.L. 901]." *288 The court concluded that the repealing ordinance was invalid and of no force and effect and the finding ordinance as to the need of such a court was still in effect.
It is our opinion that once a municipality adopts an ordinance creating a municipal court under the provisions of N.J.S.A. 2:8A-13, the municipal court is permanent and can only be abolished by the Legislature of the State of New Jersey under the authority of Article VI, Section I, paragraph 1 of the New Jersey Constitution of 1947.
However, by our statute, the governing body is given a choice of establishing a municipal court in its own municipality or of joining with one or more municipalities in creating a municipal court, and we cannot feel that it was the intention of the Legislature in authorizing two or more municipalities to establish a municipal court by the adoption of ordinances based on an intermunicipal agreement to estop any of the parties to such an agreement from ever, at any time in the future, withdrawing from such agreement and setting up its own municipal court as provided by law, whenever in the judgment of the municipal authorities the public interest so demanded.
Moreover, such an intermunicipal agreement is in the nature of a joint enterprise entered into for the mutual benefit of the parties thereto. "The term `a joint enterprise' is * * * a single joint venture in which the parties thereto are associated together for the joint benefit of all." 48 C.J.S., Joint Adventures, § 1, p. 803, and is a legal relationship distinct from any other relationship in law. In order to constitute a joint enterprise there must be an agreement to enter into an undertaking in the objects or purpose of which the parties to the agreement have a community of interest and a common purpose in its performance. It is well settled that a contract of joint enterprise may be terminated by the will of any party to the contract where there is no time limited for the continuance of the enterprise. 48 C.J.S., Joint Adventures, § 4, p. 819. "Where the contract contemplates an enterprise that may continue over an indefinite *289 period of time because of its continuous character, * * * and there is no time limited for the continuance of the enterprise, it is usually held that the contract is terminable at will by any party to it." 48 C.J.S., Joint Adventures, § 4, p. 821. But a joint enterprise cannot be terminated by one or more of the parties to it without giving notice of the termination to the other party or parties, but no particular form of notice of withdrawal is necessary, it being sufficient that unequivocal acts or circumstances are brought to the knowledge of other partners, signifying a purpose to terminate the arrangement. See Pawley v. Glasscock, 236 Ky. 821, 34 S.W.2d 729, 48 C.J.S., Joint Adventures, § 4, p. 822.
"There seems to be no reason in law which prevents two or more municipal corporations from engaging in a joint enterprise or project, except as they may be limited by constitutional or statutory provisions of the particular jurisdiction in which they are located. The right of municipal corporations to join with each other, or with the state or other political subdivisions thereof, in such enterprises as erecting and maintaining city halls, sewage disposal systems, airports, and schools is generally upheld, except where it is prevented by constitutional or statutory prohibition, such as a provision that municipal corporations shall not give money or property, or loan money or credit, to or in aid of any individual, association, or corporation, or where the particular enterprise would require the taxation of property within the municipal corporation for an improvement outside the municipal limits in violation of a constitutional provision." 37 Am. Jur. 751, § 135.
On December 18, 1951, the Township Committee of the Township of Lower Penns Neck gave written notice, signed by the members of the township committee and the township clerk, to the Township Committee of the Township of Upper Penns Neck, as follows:
"We wish to inform you that on December 6, 1951, we repealed an ordinance of the Township of Lower Penns Neck entitled `An Ordinance Establishing a Municipal Court in the Township of Upper Penns Neck, the Township of Lower Penns Neck, and the Township of Oldmans, in the County of Salem.' On that same date, we approved at its first reading an ordinance entitled `An Ordinance to Establish a Municipal Court in the Township of Lower Penns Neck in the County of Salem.'
*290 The result of that action will be that effective January 1, 1952, Lower Penns Neck Township will cease to share with your municipality and with Oldmans Township the one magistrate previously appointed for the several townships, and that the Township of Lower Penns Neck will assume the responsibility of appointing its own municipal judge."
We conclude that the ordinance adopted on November 29, 1951, by the Township Committee of the Township of Lower Penns Neck, in the County of Salem withdrawing from the intermunicipal agreement entered into with the Township of Upper Penns Neck and the Township of Oldmans in the County of Salem, and the ordinance adopted on December 20, 1951, establishing a municipal court for the Township of Lower Penns Neck are both within the power and authority of the defendant, Township Committee of the Township of Lower Penns Neck, in the County of Salem to enact, and are valid.
With respect to the third allegation of the plaintiff that "a municipal magistrate is not removable from office during his term except where charges have been preferred and a fair trial given except where the office is abolished for economy," we find the facts to be that the term of Magistrate Fred F. Foreman, appointed by the Governor on February 7, 1949, expired as of February 7, 1952. The ordinance adopted by the Township of Lower Penns Neck establishing its own municipal court became effective January 1, 1952, and on January 3, 1952, a municipal judge was appointed by the Township Committee of the Township of Lower Penns Neck pursuant to L. 1948, c. 264, § 5 (N.J.S.A. 2A:8-5).
The fact that the ordinance adopted by the Township of Lower Penns Neck repealing the ordinance establishing the intermunicipal court had the effect of ousting the plaintiff Fred F. Foreman from office as municipal magistrate of the Township of Lower Penns Neck 34 days before the expiration of his term for which he was appointed does not render this action on the part of the township committee invalid. The intermunicipal court's jurisdiction was curtailed, but the magistrate was not removed from office. See the case of *291 Shoemaker v. Township Committee of Centre Township, 129 A. 432 (Sup. Ct. 1925) in which case the plaintiff, Shoemaker, was appointed police recorder of Centre Township for a term of three years. His contention was that when a recorder is appointed for a term of three years, it is not within the power of the township committee to abolish the office and thus terminate the term of the appointee. Katzenbach, J., held:
"This contention is in my opinion not well founded. The prosecutor was not removed, but the office was abolished. The office was one created by the township committee, and not one created by the Legislature. The Legislature gave to the township committee the power to create the office. When a power of this kind is given, I am of the opinion that the power to abolish the office, if exercised in good faith, is also given. There is no testimony in the depositions taken sufficient to show that the office was not abolished in good faith. The court must presume that an act of this kind was done in good faith and in the interest of economy, rather than that it was a political subterfuge to be rid of an incumbent as one not in accord with the political complexion of the township committee."
In the matter before us, we feel that the Township of Lower Penns Neck withdrew from the intermunicipal agreement in good faith, and that the office of municipal magistrate, as far as the duties thereof in relation to the Township of Lower Penns Neck were concerned, was curtailed in good faith, if not for the purposes of economy at least for the best interest of the citizens of Lower Penns Neck Township in having their own municipal court and municipal magistrate. The rule is thus concisely stated in Mechem on Public Officers, p. 467:
"Where the Legislature has conferred upon a municipal board the authority to create offices, the board may abolish the offices so created, though the term of the incumbent has not expired."
See also 28 Cyc., p. 401 and Cooley's Constitutional Law, p. 332.
Judgment will be entered for the defendant, Township of Lower Penns Neck, and against the plaintiffs.