SCHWARTZ, Chief Judge
(dissenting).
The court has held that the taxpayers must pay for the services of an attorney in unsuccessfully attempting to resuscitate a then-nonexistent entity which the county had itself both created and properly abolished. Merely to state the result in this way, I believe, is to demonstrate its complete indefensibility.
I.
The operative facts are not in dispute. In 1983 the Board of County Commissioners passed ordinance 83-92, effective November 1, 1983, abolishing the Miami-Dade Water and Sewer Authority (WASA) as an independent agency, and restructuring it as a county department. On July 19, 1983, necessarily prior to its abolition, WASA retained Floyd Pearson to represent it in challenging the ordinance. The ensuing litigation eventually resulted in a final judgment for Dade County upholding the validity of the ordinance which was affirmed by this court in Miami-Dade Water & Sewer Auth. v. Metropolitan Dade County, 503 So.2d 1314 (Fla. 3d DCA 1987). The litigation obviously continued well past November 1, 1983, the date of WASA’s abolition. Floyd Pearson, however, supposedly representing the by-now-defunct WASA, continued its challenge of the ordinance to reinstate its by-now-former client. Only after this court administered the final death blow, the firm for the first time billed Dade County for the post-abolition services it had purportedly rendered WASA.[1] This appeal is from a decision that the county must pay. I cannot agree with that determination.
II.
The majority apparently bases its decision largely on the 1975 Tri-Partite Agreement between WASA, Dade County, and the City of Miami which empowered WASA
to do or ... cause to be done all things necessary to preserve and keep in full force and effect its existence and the *618 rights and properties of it, unless and until it is succeeded by a validly created successor governmental authority, created by law, which shall succeed to all rights, obligations, duties and properties to be performed and held by it hereunder
[[Image here]]
There are several things wrong with the court’s position on this question.
1. While I agree that WASA was authorized “to defend and perpetuate its own existence” and thus to retain counsel initially, this authority terminated on November 1, 1983. By the contract’s own terms, WASA’s power in this regard terminated upon the creation of a valid successor. And there can be no doubt that such a successor came into existence on November 1, 1983. Since that date, Dade County, as that entity, has provided all the services which had been previously supplied by WASA. Thus, there was nothing left for WASA to do or to defend.
2. The majority’s decision also apparently hinges on the fact that the courts had yet to decide the constitutionality of the ordinance and that WASA, having been contractually authorized to defend itself, was within its legal right to continue to do so until a final judicial resolution of that issue. It is well settled, however, that an ordinance is presumptively valid and that the burden of establishing otherwise is placed on the challenging party. Seaboard Air Line R.R. v. Hawes, 269 So.2d 392, 396 (Fla. 4th DCA 1972) (rejecting a similar argument on ground that “a regularly enacted municipal ordinance is presumed to be valid until the contrary is shown by the party challenging it”), cert. denied, 272 So.2d 816 (Fla.1973); see, e.g., State ex rel. Office Realty Co. v. Ehinger, 46 So.2d 601 (Fla.1950); City of Miami Beach v. Texas Co., 141 Fla. 616, 194 So. 368 (1940); see also 12 Fla.Jur.2d Counties and Municipal Corporations §§ 195-96 (1979). These authorities demonstrate that when a valid successor was created upon the effective date of the ordinance — which we explicitly decided in Miami-Dade Water & Sewer Auth. v. Metropolitan Dade County, 503 So.2d 1314 (Fla. 3d DCA 1987) — -any arguable authority to continue with the pending litigation ended as of that time. The claim that this conclusion would unfairly deprive WASA of the opportunity to challenge an ordinance which sought to end its existence ignores the fact that WASA, as purely a creation of the county, was therefore likewise subject to termination at its will. As we held again, in this very case, “[w]hen a legislative body has the power to create by ordinance, it has by implication, the power .to amend, modify or repeal by ordinance.” Water & Sewer, 503 So.2d at 1316. See State v. Dade County, 142 So.2d 79 (Fla.1962); Parker v. Evening News Publishing Co., 54 Fla. 544, 45 So. 309 (1907); Blotter v. Farrell, 42 Cal.2d 804, 270 P.2d 481 (1954); Upper Penns Neck Tp., Salem County v. Lower Penns Neck Tp., Salem County, 20 N.J.Super. 280, 89 A.2d 727 (1952); Stemmler v. Borough of Madison, 82 N.J.L. 596, 83 A. 85 (1912). Compare City of Jacksonville v. Smoot, 83 Fla, 575, 92 So. 617 (1922); City of Miami v. Rodriguez-Quesada, 388 So.2d 258 (Fla. 3d DCA 1980). On several grounds, it is thus incorrect to construe the language of the Tripartite Agreement so broadly as to grant WASA powers which clearly contravened the authority of the entity which created it.
3.Even if the provision could be interpreted as authorizing WASA to continue with the litigation after its abolition, the facts show that WASA, through its board members, never asserted that authority. As of November 1, 1983, the attorney-client relationship between Floyd Pearson and the agency came to an end. Buttressing this position is the fact that after that date, neither WASA itself nor any member of the board took any further action in this matter; specifically, there was no communication whatever with Floyd Pearson. The majority ignores this fact in relying on Ainsley Realty Co. v. Kramer, 189 So.2d 609 (Fla.1966) to support its position that Floyd Pearson was entitled to continue with the litigation after WASA’s abolition. While that case stands for the proposition that pending litigation can be continued after a corporation’s dissolution, the court clearly stated that such action is to be continued by the directors of the dissolved *619 corporation as trustees.[2] Ainsley, 189 So.2d at 610. Here, Floyd Pearson maintained no contact with anyone connected with WASA after November 1, 1983. Indeed, it avowed that it continued the litigation only because of what it considered to be its ethical obligation — although to what client remains unclear. Obviously, since the firm was not acting in representation of WASA’s board of directors, either collectively or independently, it cannot benefit from the Ainsley decision.
In fact, all subsequent actions taken challenging the abolition ordinance, were taken by Floyd Pearson independently[3] — without the direction or control of a client. Floyd Pearson’s arrangement was, if anything, no more than a contingent fee arrangement — in which, anomalously enough, the contingency of success was whether the lawyer’s client would have come into legal (and fee-paying) existence. If successful, it would have had a client— WASA — and that client would have paid for the legal services it had so fortuitously received. However, recovery under such arrangement is predicated upon the successful completion of litigation. Since the challenge proved to be ultimately unsuccessful, Floyd Pearson could recover nothing from anyone, much less its successful opponent. Thus, even the supposed client, WASA, had no obligation to pay for the services of counsel. (If it did, Floyd Pearson would surely have sued it.)[4]
Finally, and most importantly, the law firm and the court have utterly failed to bridge the logical gap between the argument — which I believe to be itself fallacious — that WASA was somehow empowered or authorized to retain counsel on its own behalf and the result of this case, which is that the county, having abolished WASA and beaten it in court, must pay for those services. I do not believe it is possible to do so.
III.
Even assuming arguendo — and over the objections upon which this opinion insists— that Floyd Pearson’s efforts on WASA’s behalf after November 1, 1983, gave rise somehow to an obligation by WASA to pay for them, the duty was not, as the court argues, assumed by Dade County under the Transfer of Obligations clause of the abolition ordinance. That provision states:
Immediately upon the effective date of the ordinance from which this article derives, Dade County, by and through its *620 board of county commissioners, shall serve as the legally and validly organized successor to the Miami-Dade Water and Sewer Authority and shall assume all of the rights, obligations, properties, and duties of the Miami-Dade Water and Sewer Authority, (emphasis added).
It is clear that, fairly read, this clause applies only to WASA’s on-going obligations for utility services, supplies and the like, rather than to a personal terminable relationship like the attorney-client one involved here. Moreover, the majority does not recognize that, even assuming its applicability, the term provides for the county’s assumption not only of WASA’s obli: gations, but its rights as well. Since WASA clearly would have had the right to direct Floyd Pearson’s representation and to discharge the firm, Fla.R.Prof. Conduct, Rules 4-1.2(a); 4-1.16(a)(3) comment (1989), Dade County could have asserted and must be deemed to have asserted that very same right.
Equally, if not more importantly, the law permits an award of fees against a non-client only when there is a specific authorization by statute or contract. E.g., Campbell v. Maze, 339 So.2d 202 (Fla.1976); Dade County v. Grossman, 354 So.2d 131 (Fla. 3d DCA 1978). That is clearly not the case here. No such authority was granted either by the provision in question or by any approval obtained by Floyd Pearson from Dade County itself.
Finally, the suggestion that Dade County waived its right to challenge the payment of Floyd Pearson’s fees is also incorrect. Waiver is defined as the voluntary or intentional relinquishment of a known right. 22 Fla.Jur.2d Estoppel and Waiver § 86 (1980). While it is true that Dade County failed to object to the lower court’s judgment declaring WASA’s right to retain independent counsel and later to dispute the firm's standing to continue with the pending action, the county made no agreement or assumption of the obligation to pay attorney’s fees, which is the only matter now in issue. Indeed, because Floyd Pearson never made so much as a claim in this regard before the end of the WASA case, the county had neither notice of its existence nor even an occasion to “waive” its objection to payment. The appellant can hardly be held to have “knowingly” given up the right to contest a claim of which it was completely unaware.
In addition, the waiver-estoppel argument is also infected by an inherent confusion between WASA’s alleged obligations and powers, that is, its “right” to maintain the action and to retain counsel to do so, on the one hand, and the county’s obligation to pay the bill, on the other. In this regard, it is unquestioned that Floyd Pearson did not expend its efforts in reliance upon such a representation. Quite the contrary is the case. The firm candidly acknowledged that it was handling the case solely in pursuit of a nobly conceived, if probably unjustified, sense of professional responsibility.[5] The admitted absence of any such detrimental reliance precludes the existence of an es-toppel or effective waiver of the county’s assertion that it should not pay. State v. Hadden, 370 So.2d 849 (Fla. 3d DCA 1979); Jefferson Nat’l Bank v. Metropolitan Dade County, 271 So.2d 207 (Fla. 3d DCA 1972), cert. denied, 277 So.2d 536 (Fla.1973); see Warren v. Department of Admin., 554 So.2d 568 (Fla. 5th DCA 1989).
IV.
As may have been indicated by the perhaps less than meticulous structure of this dissent, I believe that the majority’s conclusion is so inherently incorrect that one falls all over oneself in attempting to point out exactly how. The most basic flaw, however, seems to me to lie in the fact that any obligation to pay for another’s attorney’s fees must be founded on a duty to make indemnity for the fees owed by that client to his lawyer. Trustees of Cameron-Brown Inv. Group v. Tavormina, 385 So.2d 728 (Fla. 3d DCA 1980). In this case, not even the most basic parts of this requirement exist: there is no opposing client, who has no lawyer, and thus admit *621 tedly has no obligation to pay him. When we add to this total absence of any indem-nitee or indemnifiable obligation the fact that this non-existent debt must be paid by the successful party,[6] we enter a realm of inverted logic which can prevail only in a galaxy to which not even the Starship Enterprise has penetrated. I doubt there is any previous instance in which, while there is no “client” with even a theoretical obligation to pay a lawyer’s fee, his victorious adversary is required to do so. I would not make this case the first.

. WASA itself fully paid Floyd Pearson for the services rendered before it went out of existence on November 1, 1983.

. Although Ainsley was decided under Section 608.30, Florida Statutes, which has since been amended and renumbered, its successor, Section 607.297, Florida Statutes (1987), is very similar in nature. That provision states:
[t]he dissolution of a corporation either:
(1) By issuance of a certificate of dissolution by the Department of State;
(2) By a decree of court; or
(3) By expiration of its period of duration shall not take away or impair any remedy available to or against such corporation or its directors, officers, or shareholders for any right or claim existing, or any liability incurred, prior to such dissolution if action or other proceeding thereon is commenced within 3 years after the date of such dissolution. Any such action or proceeding by or against the corporation may be prosecuted or defended by the corporation in its corporate name. The shareholders, directors, and officers shall have power to take such corporate or other action as shall be appropriate to protect such remedy, right, or claim, (emphasis added).

. In this respect, it is doubtful that Floyd Pearson had standing to continue with the action. Florida law requires that a claim be brought either by the party who has a "sufficient stake” in the litigation or by “someone other than, but acting for, th[at] real party in interest.” Kumar Corp. v. Nopal Lines, 462 So.2d 1178, 1182-83 (Fla. 3d DCA 1985), review denied, 476 So.2d 675 (Fla.1985). While the latter qualification of the rule indicates that someone other than the real party in interest can institute an action, it is clear that that other party must represent the concerns of the real party in interest. Fla.R. Civ.P. 1.210(a); see Durrant v. Dayton, 396 So.2d 1225 (Fla. 4th DCA 1981); 39 Fla.Jur.2d Parties § 9 (1982). Floyd Pearson does not qualify, however, as such an agent or representative. On November 1, 1983, upon WASA’s abolition, its relationship with the firm terminated. Cf. Brickell v. McCaskill, 90 Fla. 441, 106 So. 470 (1925) (the death of the client terminates the attorney-client relationship). Thus, all its subsequent efforts were made voluntarily on its behalf and not, as required, on behalf of WASA, the alleged party in interest.

.The failure of the appellee firm to do so is perhaps the best practical demonstration of the fact that, after November 1, 1983, WASA no longer existed for any purpose.

. It is fortunate for Floyd Pearson, although unfortunate for the citizens that, even though it lost, its nobility has now been financially rewarded.

. In a case rife with ironies, it is a supreme one that, if the county had lost the case, WASA, and not the taxpayer would have paid Floyd Pearson's fees. The county must pay those fees only because it won.